**UNITED STATES of America,**
**Appellee,**

v.

**William J. HARDY, Appellant.**

**No. 8402.**

United States Court of Appeals
Fourth Circuit.

Argued Oct. 19, 1961.

Decided Feb. 7, 1962.

David R. Shelton, Washington, D. C., for appellant.

Douglas A. Kahn, Attorney, Department of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., John B. Jones, Jr., Acting Asst. Atty. Gen., Meyer Rothwacks and Robert N. Anderson, Attorneys, Department of Justice, Washington, D. C., and Claude V. Spratley, Jr., U. S. Atty., Norfolk, Va., on brief), for appellee.

Before SOBELOFF, Chief Judge, and SOPER and BOREMAN, Circuit Judges.

BOREMAN, Circuit Judge.

Defendant below, William J. Hardy of Fairfax County, Virginia, appeals from a final judgment of the United States District Court determining that he is liable for a portion of 1942 federal income tax in the amount of $18,957.90 plus interest thereon from March 15, 1943, until paid and from the disallowance of his counterclaim for refund of an alleged $26,484.62 overpayment of income taxes.

■ The evidentiary facts have been stipulated, but as to the interpretation of these facts the parties violently disagree. On March 15, 1943, Hardy filed his federal income tax return for 1942 revealing a tax liability for that year of $37,915.81, which amount was duly and regularly assessed on June 4, 1943. During 1943 Congress enacted the "Current Tax Payment Act of 1943", 57 Stat. 126 (1943), 26 U.S.C.A. § 1621 et seq., which changed the tax collection system from one in which income taxpayers made payments

each year of the taxes owed for the previous year to a pay-as-you-go system in which collections of tax were made during the year when the liability therefor was incurred. In order to avoid a double tax burden for taxpayers in the year of transition, Congress included a relief provision, section six, the relevant portion of which is reproduced below.[1] Insofar as this case is concerned and in the absence of taxpayer's fraud, section six would have forgiven payment of three-quarters of the 1942 tax and would have required the remaining quarter to be added to the 1943 tax liability. The change was effective as of September 1, 1943, and no further payments on 1942 tax liability were to be made after that date. Payments of the 1942 tax made prior to the change-over date were to be credited on the 1943 liability, including the unforgiven portion of 1942 taxes. However, section six of the Current Tax Payment Act, sometimes hereinafter referred to as the Act, provided that the forgiveness feature did not apply in event additional taxes for 1942 were due by reason of taxpayer's filing of a fraudulent tax return for that year.

Prior to September 1, 1943, Hardy had paid $18,957.91 or one-half of his reported 1942 tax liability. In accord with the Act, he made no further payments on his 1942 taxes until March 1944, when he filed his 1943 return which revealed a tax liability of $49,621.73 for income received during 1943; in addition Hardy added the unforgiven one-fourth of his 1942 taxes, thus giving him a total reported tax liability for 1942 and 1943 of $59,100.68. From this total amount he deducted as a credit $35,069.09 which he had paid during 1943 for that year's taxes and the $18,957.91 that had been paid on account of 1942 taxes, leaving a balance due of $5,073.68. This amount was duly paid.

In 1947 the Commissioner began an investigation of Hardy's returns for 1942 and subsequent years. Taxpayer was indicted on November 10, 1949, and in 1950 entered pleas of nolo contendere to charges that he filed fraudulent tax returns for the years 1944 through 1946. There was no indictment or conviction with respect to the filing of a fraudulent return for 1942. Nevertheless, Hardy has stipulated that for purposes of this case it may be accepted as true that he wilfully intended to evade a portion of his income tax for the year 1942 and that a 50% penalty on the 1942 deficiency was properly assessed in 1951 and paid on account of the fraud. After Hardy had paid a fine and served a prison sentence imposed for filing fraudulent 1944–1946 returns, the Commissioner made a jeopardy assessment against taxpayer for the years 1942 to 1947, inclusive, in the total amount of $205,610.44 which included

1. SEC. 6 "Relief From Double Payments In 1943. * * *

"(a) *Tax for 1942 Not Greater Than Tax for 1943.* In case the tax imposed by Chapter 1 of the Internal Revenue Code [1939] upon any individual (other than an estate or trust and other than a nonresident alien not subject to the provisions of sections 58, 59, and 60 of such chapter) for the taxable year 1942 (determined without regard to this section, without regard to interest or additions to the tax, and without regard to credits against the tax for amounts withheld at source) is not greater than the tax for the taxable year 1943 (similarly determined), the liability of such individual for the tax imposed by such chapter for the taxable year 1942 shall be discharged as of September 1, 1943, except that interest and additions to such tax shall be collected at the same time and in the same manner as, and as a part of, the tax under such chapter for the taxable year 1943. In such case if the tax for the taxable year 1942 (determined without regard to this section and without regard to interest or additions to the tax) is more than $50, the tax under such chapter for the taxable year 1943 shall be increased by an amount equal to 25 per centum of the tax for the taxable year 1942 (so determined) or the excess of such tax (so determined) over $50, whichever is the lesser. *This subsection shall not apply in any case in which the taxpayer is convicted of any criminal offense with respect to the tax for the taxable year 1942 or in which additions to the tax for such taxable year are applicable by reason of fraud.*" (Emphasis added.)

tax, penalties and interest to November 21, 1951. Following the assessment on the latter date, a 90-day letter was sent on December 14, 1951, to taxpayer advising him that his income tax liability for 1942 through 1947 was as follows:

| Year | Deficiency | 50% Penalty | 5% Penalty | Interest to Nov. 21, 1951 |
|------|------------|-------------|------------|---------------------------|
| 1942 | $ 4,574.62 | $ 2,287.31 | | $ 2,383.31 |
| 1943 | 15,692.41 | 3,106.73 | | 7,233.99 |
| 1944 | 16,271.80 | 8,135.90 | | 6,524.77 |
| 1945 | 27,613.84 | 13,806.92 | | 9,415.94 |
| 1946 | 39,883.59 | 19,941.80 | | 1,206.74 |
| 1947 | 21,739.32 | | $987.36 | 4,804.09 |
| | $125,775.58 | $47,278.66 | $987.36 | $ 31,568.84 |
| Total tax, penalties and interest | | | | $205,610.44 |

The entire $205,610.44 was paid in full. An error was made in the 90-day letter, however, in stating interest due on the 1946 deficiency and an additional $10,000, plus interest thereon, was subsequently assessed and paid. Included in the total liability assessed against Hardy was $9,-478.96, designated in the notice of deficiency (90-day letter) as "Balance (Reassessed portion of 1942 tax)." The 90-day letter also included a 5% negligence penalty of $1,052.81 (including interest) because in 1947 Hardy had claimed a $33,900 loss as a business bad debt instead of a nonbusiness bad debt. On May 2, 1952, the Commissioner reassessed against taxpayer $18,957.90, the amount alleged to be the unpaid balance of 1942 taxes. This action to collect the amount so assessed was commenced on May 1, 1958, that being one day less than six years from the date of assessment.

In both the District Court and on appeal, taxpayer has advanced three general theories of defense with respect to the Government's claim, and the same theories are, with consistency, used offensively in asserting his counterclaim. First, it is contended that all the 1942 tax has long since been paid in quarterly payments as follows:

1. 25%, amounting to $9,478.96, paid on March 15, 1943.

2. 25%, amounting to $9,478.95, paid on June 15, 1943.

3. 25%, amounting to $9,478.95, included in his 1943 return as provided by the Current Tax Payment Act and paid.

4. 25%, amounting to $9,478.96, paid on December 31, 1952, as part of jeopardy assessment. (The 90-day letter of December 14, 1951, labeled part of the assessed amount as *reassessed* portion of 1942 tax.)

The Government concedes that the first two payments totaling $18,957.91 were paid on the 1942 tax liability. The Commissioner argues, however, that the remaining balance of $18,957.90 was not paid in the manner as claimed by taxpayer or otherwise. The Commissioner reasons: Taxpayer reported his federal income tax liability for 1943 alone as $49,621.73. In discharge of that liability, he paid $40,142.77, leaving a balance of $9,478.96. In 1944 the Commissioner, who then had no knowledge of taxpayer's fraud, thought that balance had been satisfied because taxpayer, in accord with the Current Tax Payment Act, credited $18,957.91 (the amount theretofore paid on his 1942 tax liability) against his reported total 1943 liability. The remaining credit from the 1942 tax offset the addition to the 1943 tax due of 25% of 1942 liability. The net effect of the entire transaction was to give Hardy a credit toward his 1943 tax liability (exclusive of any 1942 liability) equal to

25% of the reported 1942 liability ($9,-478.96).

It is true, as taxpayer states, that the Commissioner, in his 90-day letter of December 14, 1951, labeled a portion of the 1943 tax due as "Balance (Reassessed portion of 1942 tax)" but it is clear from an analysis of the letter's explanation of adjustments of 1943 tax that the balance is erroneously labeled. That balance of $9,478.96 is actually the amount which, as of the date of the letter, remained unpaid on 1943 tax liability, as found by the District Court. It was paid along with other deficiencies assessed in the 1951 jeopardy assessment and, of course, there is no longer any dispute over Hardy's 1943 taxes.

Though it is understandable how one might be confused by the misdescription of "Balance" in the 90-day letter, it is clear that the reference is to unpaid tax for the year 1943, not to 1942 tax liability. The Government's position is correct, i. e., that the remaining one-half of the 1942 tax liability, $18,957.90, originally thought to be forgiven by the Current Tax Payment Act but subsequently found to be payable because of taxpayer's fraud in connection with his 1942 return, is still unpaid and owing. The Government's computation is correct, but the same result is achieved in perhaps a more simplified manner, as demonstrated below. It is acknowledged that the Current Tax Payment Act of 1943 does not apply to Hardy's 1942 tax; hence, all of his reported tax for the years 1942 and 1943 must be paid:

| | |
|---|---|
| $37,915.81 | Reported 1942 tax on 1942 income |
| 49,621.73 | Reported 1943 tax on 1943 income |
| $87,537.54 | Total tax due for 1942 and 1943 (less fraud deficiencies and penalties not here in question) |

Payments toward the total combined tax liability for 1942 and 1943 were made as follows:

| | |
|---|---|
| $18,957.91 | One-half reported 1942 tax paid in March and June 1943 |
| 35,069.09 | Funds paid during 1943 in discharge of 1943 tax liability |
| 5,073.68 | Balance of 1943 tax due and paid when 1943 return was filed. |
| 9,478.96 | Portion of jeopardy assessment in November 1951 (this is the sum labeled "Balance (Reassessed portion of 1942 tax)," but for purposes of this demonstration it makes no difference whether this fund is labeled 1942 or 1943 tax since the tax liability for both years is here combined) |
| $68,579.64 | Total funds actually paid in the discharge of reported 1942–1943 tax liability |

The difference between the combined 1942–1943 tax liability and the payments made to discharge that liability is the amount of the principal sum here sued for:

| | |
|---|---|
| $87,537.54 | Combined 1942–1943 tax liability |
| 68,579.64 | Amounts actually paid, 1942–1943 tax |
| $18,957.90 | Unpaid balance of 1942–1943 tax liability |

A careful inspection of the record shows clearly that this amount has not been paid against the combined 1942–1943 tax liability and, as previously indicated, this outstanding balance is properly labeled the unpaid one-half of reported 1942 tax. The question remains: Has the Government lost its right to collect?

 Taxpayer's second defense is that his payment in full of all deficiencies which were covered in the 90-day letter of December 14, 1951, and by the jeopardy assessment represented an accord and satisfaction with respect to all tax liabilities against him for the years 1942–1947, including the amount here alleged to be owing. It is argued that the jeop-

ardy assessment and accompanying 90-day letter together constitute an "account stated." No authority is cited for this proposition, but we are referred to the principles discussed in 10 Mertens, Law of Federal Income Taxation, § 58A.14 (1958). Upon examination of that section, which deals with tax refunds based on an account stated, we find nothing to aid the taxpayer here. It there appears that an account stated is based upon an agreed balance struck between the parties and a promise of the payment of such balance due one of them. Furthermore: "If an account is stated under a mutual mistake of fact it has been held voidable by either party, and hence a suit brought by the taxpayer thereupon has been denied where the Commissioner found and corrected the mistake." [2] Contrary to taxpayer's claims, a 90-day letter is certainly not, on its face, a statement of an agreed balance because it is stated there-

in that an appeal to the Tax Court is permitted to determine the taxpayer's liability for the deficiencies claimed by the Commissioner. Likewise, a jeopardy assessment does not purport to be a final statement of a balance due the Government. Int.Rev.Code of 1939, § 273(c), 26 U.S.C.A. § 273(c).[3] Even if it could be said that a jeopardy assessment or a 90-day letter constituted an account stated, the presence of the several mutual mistakes which are involved in this action would render such an account voidable by either party. Here the Commissioner, by pressing for payment of additional 1942 tax, clearly indicates his position that the "account stated," if it ever existed, was rendered void by the mutual mistakes of fact.

■■ Furthermore, the Government urges, and it is well established, that Int.Rev.Code of 1939, §§ 3760 and 3761, 26 U.S.C.A. §§ 3760, 3761,[4] provide the

---

2. Mertens, loc. cit., supra, ch. 58A, p. 42, citing Otis Elevator Co. v. United States, 36 F.Supp. 328, 92 Ct.Cl. 590 (1941) as the case referred to.

3. "§ 273. Jeopardy assessments
 \* \* \* \* \*
 "[(c) Amount assessable before decision of Board.] The jeopardy assessment may be made in respect of a deficiency greater or less than that notice of which has been mailed to the taxpayer, despite the provisions of section 272(f) prohibiting the determination of additional deficiencies, and whether or not the taxpayer has theretofore filed a petition with the Board of Tax Appeals. The Commissioner may, at any time before the decision of the Board is rendered, abate such assessment, or any unpaid portion thereof, to the extent that he believes the assessment to be excessive in amount. The Commissioner shall notify the Board of the amount of such assessment, or abatement, if the petition is filed with the Board before the making of the assessment or is subsequently filed, and the Board shall have jurisdiction to redetermine the entire amount of the deficiency and of all amounts assessed at the same time in connection therewith."

4. "§ 3760. Closing agreements
 "(a) Authorization. The Commissioner (or any officer or employee of the Bu-

reau of Internal Revenue, including the field service, authorized in writing by the Commissioner) is authorized to enter into an agreement in writing with any person relating to the liability of such person (or of the person or estate for whom he acts) in respect of any internal revenue tax for any taxable period.
 "(b) Finality. If such agreement is approved by the Secretary, the Under Secretary, or an Assistant Secretary, within such time as may be stated in such agreement, or later agreed to, such agreement shall be final and conclusive, and, except upon a showing of fraud or malfeasance, or misrepresentation of a material fact—
 "(1) The case shall not be reopened as to the matters agreed upon or the agreement modified, by any officer, employee, or agent of the United States, and
 "(2) In any suit, action, or proceeding, such agreement, or any determination, assessment, collection, payment, abatement, refund, or credit made in accordance therewith, shall not be annulled, modified, set aside, or disregarded. 53 Stat. 462."
 "§ 3761. Compromises
 "(a) Authorization. The Commissioner, with the approval of the Secretary, or of the Under Secretary of the Treasury, or of an Assistant Secretary of the Treasury, may compromise any civil or criminal case arising under the inter-

exclusive means for final closing of a tax year. See Botany Worsted Mills v. United States, 278 U.S. 282, 49 S.Ct. 129, 73 L.Ed. 379 (1929); Page v. Lafayette Worsted Co., 66 F.2d 339 (1st Cir.), certiorari denied, Lafayette Worsted Co. v. Page, 290 U.S. 692, 54 S.Ct. 127, 78 L.Ed. 596 (1933); McIlhenny v. Commissioner, 39 F.2d 356 (3d Cir. 1930); L. Loewy & Son, Inc. v. Commissioner, 31 F.2d 652 (2d Cir. 1929). There is no contention by taxpayer here that there has been compliance with the provisions of either of those sections. The payment of a deficiency, without more formal action by the parties, does not constitute an accord and satisfaction. L. Loewy & Son, Inc. v. Commissioner, 31 F.2d 652 (2d Cir. 1929). We conclude that there was no accord and satisfaction or account stated between Hardy and the Commissioner.

■ In connection with this argument taxpayer directs our attention to certain facts which he considers significant but which we consider largely irrelevant. He particularly emphasizes the Government's failure to call as witnesses the Revenue Agents and other Internal Revenue Service employees who allegedly knew whether the very tax in issue had been paid. Taxpayer relies upon the principle stated in his brief as follows:

"When 'witnesses who are in the power, and * * * under the influence of the party, are omitted to be examined, when it is impossible that they should not be intimately acquainted with the most material circumstances * * * a court must be expected to look at the proofs before it with more than ordinary suspicion and distrust.' The New York,

3 Wheaton 59, 65, 4 L.Ed. 333. Failure to examine Mr. Snowa [official in District Director's office who handled the collection of Mr. Hardy's account] or the Revenue Agents clearly shows that their testimony 'if offered * * * would sustain the case against' the Government. Henderson v. Richardson Co., 25 F.2d 225 (CA 4, 1928); Wilson v. Williams Hardware Co., 32 F.2d 103 (CA 4, 1929); Ariasi v. Orient Ins. Co., 50 F.2d 548 (CA 9, 1931); Austerberry v. United States, 169 F.2d 583 (CA 6, 1948)."

We have examined these cited cases and conclude that they do not aid taxpayer here. In each case, except Ariasi, the party having the burden of persuasion failed to introduce documents or equipment which, or witnesses who, presumably could have materially supported its position. Ariasi appears to have no bearing on the issue involved here. In the instant case, the Commissioner made out a prima facie case by presenting evidence of a stipulation that on May 2, 1952, there was an assessment of the tax sued for and that the taxpayer refused to pay the assessment. There is a presumption in favor of the correctness of the Commissioner's determination, and the taxpayer had the burden of showing that the tax was not due. Commissioner v. Hansen, 360 U.S. 446, 79 S.Ct. 1270, 3 L.Ed. 2d 1360 (1959); Richardson v. Commissioner, 264 F.2d 400, 404 (4th Cir. 1959); Bowden v. Commissioner, 234 F.2d 937 (5th Cir.), certiorari denied, 352 U.S. 916, 77 S.Ct. 215, 1 L.Ed.2d 123 (1956). Thus, if the court were to look with suspicion and distrust at a party's failure to introduce witnesses who supposedly have

---

nal revenue laws prior to reference to the Department of Justice for prosecution or defense; and the Attorney General may compromise any such case after reference to the Department of Justice for prosecution or defense.

"(b) Record. Whenever a compromise is made by the Commissioner in any case there shall be placed on file in the office of the Commissioner the opinion of the General Counsel for the Depart-

ment of the Treasury, or of the officer acting as such, with his reasons therefor, with a statement of—

"(1) The amount of tax assessed,

"(2) The amount of additional tax or penalty imposed by law in consequence of the neglect or delinquency of the person against whom the tax is assessed, and

"(3) The amount actually paid in accordance with the terms of the compromise. * * * 53 Stat. 462."

relevant information *that the tax sued for had been paid*, the defendant here would be the disfavored party. There was nothing to prevent taxpayer from calling as witnesses the agents or other Internal Revenue Service employees who were said to have been in the court room during the trial.

■ The third defense raised by the taxpayer is that the present collection proceeding is barred by the six-year statute of limitation,[5] running from the date of the original assessment of 1942 taxes, June 4, 1943. It is contended that the statute barred any action after June 4, 1949, and the present action was improvidently brought since it was filed on May 1, 1958.

The Commissioner counters with the argument that Int.Rev.Code of 1939, § 276(c), 26 U.S.C.A. § 276(c), has no application here because fraud was discovered in connection with the 1942 tax return; that Int.Rev.Code of 1939, § 276 (a),[6] (which provides that there is no statute of limitation barring assessment, or collection without assessment, of any deficiency resulting from a fraudulent failure to file a return or from the filing of a false return with intent to evade taxes) is to be applied. Since there is no bar to the assessment of deficiencies due to fraud, the Commissioner claims, the "reassessment" on May 2, 1952, of the amount reported as 1942 tax liability is legal, and the present action, having been filed within six years of the "reassessment," is proper. The District Court's acceptance of the Commissioner's

contentions is apparent from the following quotation:

" * * * The original assessment had been made on June 4, 1943, within three months after the return was filed. It was erased in accordance with the Current Tax Payment Act upon the presumption of honesty in the 1942 return. When this hypothesis proved untrue, the assessment was restored on May 2, 1952. Whether the reinstatement be a revival of the old or a reassessment is not material, because the fraud removed all time barriers to the assessment or collection of the tax. 1939 I.R.C. 276(a)."

The problem in this case is that the Current Tax Payment Act of 1943 ostensibly forgave a major portion (three-fourths) of the 1942 tax liability and the Commissioner was no longer authorized to make collections on the bases of the 1942 assessments except in cases where fraud was involved. Subsection 6(a) of that Act, absent the exception contained in the concluding sentence, "discharged" a portion of the 1942 tax liability as of September 1, 1943, thus in effect canceling the assessments for 1942 tax already made by the Commissioner, but 6(a) concludes with the provision that the subsection shall not apply to the taxable year 1942 if additions to the tax for that year are applicable by reason of fraud. Thus, there was no discharge of Hardy's 1942 tax liability and his obligation to pay remained even though the assessment evidencing his liability was in effect abrogated.

5. "§ 276. Same [Period of limitation upon assessment and collection]—Exceptions * * *

"(c) Collection after assessment. Where the assessment of any income tax imposed by this chapter has been made within the period of limitation properly applicable thereto, such tax may be collected by distraint or by a proceeding in court, but only if begun (1) within six years after the assessment of the tax, or (2) prior to the expiration of any period for collection agreed upon in writing by the Commissioner and the taxpay-

er before the expiration of such six-year period. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon. * * * 53 Stat. 87."

6. "(a) False return or no return. In the case of a false or fraudulent return with intent to evade tax or of a failure to file a return the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time."

Congress apparently did not specifically and definitively deal with the problem here presented. If the Act and section 276(c) are read together and interpreted literally, as is urged by the taxpayer,[7] one reaches the anomalous result that the Commissioner would be charged by Congress with knowledge of taxpayer's fraud when, in fact, he had no such knowledge and would be charged with the duty to proceed to collect taxes reported as owing but which he could rightfully and reasonably presume were forgiven by the Act. In other words, the Commissioner would have no statutory authority to enforce collection of 1942 assessments until he discovered fraud in connection with the 1942 return, and the date of such discovery might well be after the expiration of the statutory period of limitation which would apply if the forgiveness provision of the Current Tax Payment Act is to be totally inapplicable and disregarded as subsection 6(a) requires in cases of fraud. Thus, if a dishonest taxpayer were skillful enough to conceal his fraud until after the expiration of the statutory limitation period, the Commissioner would be barred from collecting the balance of any amount already assessed but which remained unpaid because of reliance upon the correctness of the return and upon the applicability of the Current Tax Payment Act.

We reject such a result which would follow from a strict construction of the statutes just mentioned as illogical and certainly beyond the intent of Congress, in the light of the policies manifested both in the Current Tax Payment Act and sections 276(a) and 276(c).

By section 275(a) Congress provided that the Commissioner has three years after the date a tax return is filed to assess tax on the basis of the reported information. But Congress must have been aware, when it passed the Current Tax Payment Act of 1943, that the 1942 tax would have already been assessed before the Act became effective and that it would be necessary to abate or erase a portion of that assessment. Congress must have been aware also of the difficulties in discovering fraud and that often many years were required in which to uncover fraudulent activities, this awareness being evidenced by section 276 (a). The very evil at which that section is aimed is that a taxpayer shall not escape tax consequences simply because he may successfully deceive for any particular period of time. It is beyond belief that in these circumstances Congress intended the exclusion from the benefits of the Act to apply *only* if the fraud were discovered within less than six years of the effective date of the Act. Congress clearly intended, by enacting the Current Tax Payment Act, to provide a measure of tax relief to honest taxpayers who had made true returns of 1942 taxable income and to deny such relief to taxpayers who were fraudulently withholding full information with intent to avoid the payment of taxes. It is inconceivable that there was any intent to forgive any portion of the actual 1942 tax liability of a taxpayer who might successfully conceal his fraud during the statutorily limited collection period following an assessment which was based upon erroneous and incomplete information supplied by taxpayer himself. Indicative of congressional

7. Taxpayer argues in his brief in this connection that the Current Tax Payment Act is a relief provision which "*can never be construed to impose additional burdens on taxpayers or to deprive them of any protection already afforded by the existing law.* Colson Corporation, 5 T.C. 1035, 1040 (1945); Carter Mullaly et al., Trustees, 5 T.C. 1376, 1379 (1945); Fain Drilling Co., 8 T.C. 1174, 1176–1177 (1947); Bonwit Teller & Co. v. United States, 283 U.S. 258, 51 S.Ct. 395, 75 L.Ed. 1018, 9 AFTR 1421; Helvering v. Bliss, 293 U.S. 144, 55 S.Ct. 17, 79 L.Ed. 246, 14 AFTR 668; and Section 3.09, Mertens, Law of Federal Income Taxation (1956 Edition)." This principle has no application here because admittedly the Current Tax Payment Act does not apply in this case because of fraud, and we are not called upon to determine whether or not the relief provisions of the Act apply to Hardy.

intent is the concluding portion of subsection 6(a) of the Act which renders wholly inoperative and inapplicable the tax forgiveness provisions where fraud existed in connection with the 1942 returns. The obligation to pay the correct amount of 1942 taxes remained undisturbed.

Here the taxpayer's fraud, so far as disclosed by this record, originated with the filing of the 1942 return. Without interruption the fraudulent activities persisted and continued with the filing of the 1943 return in which the taxpayer claimed the benefits of the forgiveness provisions of the Act when he knew that he was not entitled to do so. His deception continued through the years until exposed as the result of an exhaustive and prolonged investigation commenced in 1947 and thereafter conducted by Government agents. Thus, by his conduct he impliedly represented to the Commissioner that (1) the forgiveness provision of the Current Tax Payment Act applied to him; (2) the assessment of the 1942 tax liability had been properly canceled and abrogated; (3) he owed no more than one-fourth of the reported and assessed 1942 tax liability; (4) the Commissioner had no right or duty to collect the allegedly forgiven portion of the assessed 1942 tax; and (5) the Commissioner was not being disadvantaged by the passage of time and more particularly the six years following the date of the original 1942 tax assessment. The Commissioner, relying upon such representations as was his right, did not take the action to collect the unpaid one-half portion of the 1942 tax, which taxpayer now boldly asserts should have been taken within the six-year statutory period.

It is urged by taxpayer that Rothensies v. Electric Storage Battery Co., 329 U.S. 296, 67 S.Ct. 271, 91 L.Ed. 296 (1946), and United States v. Updike, 281 U.S. 489, 50 S.Ct. 367, 74 L.Ed. 984 (1930), are directly in point and should control our decision in this case. Clearly, neither case deals with the Current Tax Payment Act of 1943 and its effect on the statute of limitations and thus is not directly in point although both cases persuasively deal in broad terms with the congressional policy manifested in the statutory limitation on the collection of old taxes. In the case at bar, however, taxpayer's own fraud prevented the collection of the tax within the normal statutory period, and in this connection the Government calls our attention to R. H. Stearns Co. v. United States, 291 U.S. 54, at page 61, 54 S.Ct. 325, at page 328, 78 L.Ed. 647 (1934), where it is stated:

"* * * To know whether liability has been barred by limitation it will not do to refer to the flight of time alone * * *. The applicable principle is fundamental and unquestioned. 'He who prevents a thing from being done may not avail himself of the nonperformance which he has himself occasioned, for the law says to him, in effect "this is your own act, and therefore you are not damnified."'"

This case is a proper one for the application of the equitable principle relied upon in Stearns. It is well established that no man can take advantage of his own wrong.

It is stated in Glus v. Brooklyn Eastern Dist. Terminal, 359 U.S. 231, 232–233, 79 S.Ct. 760, 762, 3 L.Ed.2d 770 (1959):

"Deeply rooted in our jurisprudence this principle has been applied in many diverse classes of cases by both law and equity courts and has frequently been employed to bar inequitable reliance on statutes of limitations."

The same principle was approved and applied in Schroeder v. Young, 161 U.S. 334, 16 S.Ct. 512, 40 L.Ed. 721 (1896); Randon v. Toby, 11 How. 493, 52 U.S. 493, 13 L.Ed. 784 (1850); Scarborough v. Atlantic Coast Line R. Co., 178 F.2d 253 (4th Cir. 1949), certiorari denied, Atlantic Coast Line R. Co. v. Scarborough, 339 U.S. 919, 70 S.Ct. 621, 94 L.Ed. 1343 (1950); Tucker v. Owen, 94 F.2d 49 (4th Cir. 1938). Other cases are

collected in annotations in 130 A.L.R. 8 (1941) and 24 A.L.R.2d 1413 (1952).

Since, for these reasons stated, it follows that the Commissioner had the right to make the May 2, 1952, assessment and has the right to maintain the present action, we need not determine the correctness of the District Court's decision concerning the applicability of section 276 (a) and its holding that the fraud removed all time barriers to the assessment or collection of the tax.

Taxpayer's counterclaim alleges that the amounts collected for the 1942 liability were illegally collected because the six-year statute of limitation for 1942 liability had expired in 1949. In addition, it is charged that there was no reason to assess a negligence penalty in connection with the reporting of a non-business bad debt as a business bad debt since the distinction is highly technical and subject to conflicting views by tax authorities. The third item involved in the counterclaim is the $10,000 plus interest assessed and collected because of the error in the December 14, 1951, 90-day letter reporting the 1946 interest as $1,206.74 instead of the correct amount, $11,206.74. The defendant's theory is that the jeopardy assessment in November 1951 and subsequent 90-day letter were in the nature of an account stated and that full payment of the jeopardy assessment was an accord and satisfaction of all tax accounts for the years 1942 through 1947. As previously noted, the elements of the counterclaim are but the converse of the defenses raised by Hardy to the Commissioner's main claim.

Since we have determined that $18,-957.90 of the 1942 tax liability has not been paid, the taxpayer's counterclaim

for that amount, based upon the alleged payment thereof, must fail. The Government was entitled to make additional assessments after the jeopardy assessment and deficiency notice to correct mistakes in the notice because there was no accord and satisfaction between the Commissioner and the taxpayer. Hardy makes no argument, nor did he introduce any evidence to show why the negligence penalty should not have been assessed. As already pointed out, it is well established that there is a presumption in favor of the Commissioner's assessment and that the taxpayer has the burden of showing the Commissioner's error. There has been no attempt by Hardy to meet this burden, hence there can be no recovery of the assessed and paid negligence penalty added to the 1947 tax.

■ Aside from the fact that each element of the counterclaim was properly disallowed on its merits, the Government contends that the major part of the claim was barred by the statute of limitation in Int.Rev.Code of 1939 § 322 (b) (1), 26 U.S.C.A. § 322(b) (1),[8] which requires taxpayers to file claims for refund within three years from the date when the return was filed or within two years from the date when the tax was paid. With the exception of the negligence penalty, the date of the payment of which is not revealed by the record, the taxes claimed as refundable were paid on December 31, 1952, whereas the claim for refund was not filed until March 25, 1958, after the termination of the statutory period within which such claims must be filed.

The judgment below will be

Affirmed.

8. "§ 322. Refunds and credits

\* \* \* \* .\*

"(b) Limitation on allowance
"(1) Period of limitation. Unless a claim for credit or refund is filed by the taxpayer within three years from the time the return was filed by the taxpayer or within two years from the time the tax was paid, no credit or re-

fund shall be allowed or made after the expiration of whichever of such periods expires the later. If no return is filed by the taxpayer, then no credit or refund shall be allowed or made after two years from the time the tax was paid, unless before the expiration of such period a claim therefor is filed by the taxpayer."