**Billy Joe HELTON**

v.

**UNITED STATES of America.**

No. 15196.

United States Court of Appeals, Fifth Circuit.

April 6, 1955.

Charles W. Tessmer, Dallas, Tex., for appellant.

William O. Braecklein, Asst. U. S. Atty., Dallas, Tex., Heard L. Floore, U. S. Atty., Fort Worth, Tex., for appellee.

Before HOLMES and RIVES, Circuit Judges, and WRIGHT, District Judge.

WRIGHT, District Judge.

Appellant was convicted on two counts in an indictment charging violations of Title 26, Sections 2593(a) and 3234 relating to the illegal acquisition and production of marijuana. He asks reversal of that conviction because of the trial court's failure to suppress certain evidence and the admission in evidence of alleged improper and prejudicial testimony.

The record shows that on May 20, 1953, three police officers of the Dallas, Texas, police force, using an admittedly invalid search warrant issued by a local judge, searched the home of the defendant where a small amount of marijuana was found in a tobacco can in the pocket of a raincoat in the bedroom, another small amount under the dashboard of his automobile which was then in the driveway of his home, and sixty-nine stalks of marijuana growing near a fence in the rear yard.

The defendant did not take the stand. His wife testified that she had never seen marijuana in their home or in appellant's car, and that she was unaware of the marijuana growing in the rear yard. She testified further that she and her husband rented the apartment garage to roomers who had access to the bedroom, where the marijuana was found, in going to and from the bathroom, and that shortly before her husband's arrest, one Pugh, who had resided with them as a roomer, left without notice, leaving his clothes and other articles behind.

After appellant's arrest by the city police, he was turned over to federal narcotics agents who instituted this prosecution. Appellant contends that there

existed a pattern of cooperation between Dallas police and the federal narcotics bureau which had the effect of making every narcotics search by the city police of Dallas in law a search by federal officers, and that since the Fourth Amendment prohibits illegal searches by federal officers, the evidence so obtained may not be, and should have have been, used against him.

■ The evidence upon which appellant seeks to support his allegations of cooperation between the Dallas city police and federal narcotics officers is so strikingly similar to the evidence on the same subject in Scotti v. United States, D.C., 102 F.Supp. 747, affirmed by this court, 5 Cir., 193 F.2d 644, that we shall content ourselves by merely adhering to the principles therein announced, and by holding that the evidence here does not outline a pattern of cooperation between the city police and federal officers which would make a narcotics search by the city police a search by federal officers. Since the federal officers did not participate in the search, the evidence thereby produced is admissible in evidence in the federal prosecution, in spite of the illegal manner in which it was obtained by the city police. Feldman v. United States, 322 U.S. 487, 64 S.Ct. 1082, 88 L.Ed. 1408.

Although unable to convince us that the evidence on which he was convicted should be suppressed because of an illegal search, we are nevertheless constrained to hold that the appellant is entitled to, and must have, a new trial because of the admission in evidence against him of improper and prejudicial testimony. The federal agent, who was called in by the city police upon the arrest of appellant, testified that he questioned appellant regarding the marijuana found in and around his home. He testified that the appellant told him "that he had been smoking marihuana intermittently very seldom for the past four or five years." There was an immediate objection by counsel for the defense, together with a concession by the prosecuting attorney, that the witness's remark was an improper one and that the reference to appellant's smoking marijuana in the past should be excluded from the jury.

Acting on the request of both counsel, the trial court made the following ruling, "On suggestion or request of the District Attorney, and of the defendant's counsel, of any admission or statement by the defendant about being a marihuana smoker at some previous time, is withdrawn from them, and stricken from the record." Not being satisfied that the ruling by the court could blot out from the jury's mind the evidence improperly introduced respecting a totally disconnected and extraneous violation of the law by the appellant, appellant's counsel moved for a mistrial, which was denied.

■■ It is hornbook that, absent a requirement of showing system or intent, evidence of offenses not charged in the indictment is not only inadmissible, but prejudicial if admitted. Boyd v. United States, 142 U.S. 450, 12 S.Ct. 292, 35 L.Ed. 1077; Guilbeau v. United States, 5 Cir., 288 F. 731. It is true that here the trial court ordered the improper evidence stricken from the record, but he gave no instruction whatever to the jury to disregard the improper testimony. In fact, in the circumstances of this case, it is doubtful that any instruction, however strong, would have succeeded in destroying the picture which this remark created in the jury's mind of the appellant smoking marijuana, with marijuana growing in his back yard, with some in his bedroom and some in his car. The defense in this case suggested that the marijuana found on the appellant's premises was left there by a former roomer. Whatever hope the appellant had of the jury's accepting that defense was blighted by the admission that appellant himself was a marijuana smoker.

■■ It is admitted, of course, that, as a general rule, evidence which is withdrawn from the consideration of the jury by the direction of the trial judge may not serve as a basis for reversible

error, that the direction of exclusion by the court cures any error which may have been committed in its introduction. Throckmorton v. Holt, 180 U.S. 552, 21 S.Ct. 474, 45 L.Ed. 663; Hopt v. Utah, 120 U.S. 430, 7 S.Ct. 614, 30 L.Ed. 708; Pennsylvania Co. v. Roy, 102 U.S. 451, 26 L.Ed. 141. But where, as here, the improper evidence was calculated to make such an impression on the jury that no direction from the court, however strong, can eliminate the prejudice thereby created, the trial court must declare a mistrial. Fiswick v. United States, 329 U.S. 211, 218, 67 S.Ct. 224, 91 L.Ed. 196; Mora v. United States, 5 Cir., 190 F.2d 749.

 Appellant also complains of the admission, over objection, of testimony by one of the city police to the effect that after his arrest, appellant was given an opportunity to explain the presence of marijuana found on his premises and that he did not do so.[1] In the circumstances of this case, we hold that this testimony constituted an attempt on the part of the Government to convict the appellant by his silence, by having the jury draw an inference of guilt from his refusal to explain, in violation of the spirit, if not the letter, of the Fifth Amendment. United States ex rel. Belfrage v. Shaughnessy, 2 Cir., 212 F.2d 128; Spector v. United States, 9 Cir., 193 F.2d 1002; United States v. Lo Biondo, 2 Cir., 135 F.2d 130; Yep v. United States, 10 Cir., 83 F.2d 41; McCarthy v. United States, 6 Cir., 25 F.2d 298.

The evidence in this case shows that the appellant steadfastly denied his guilt from the time of his arrest through the time of his trial. Even when the city police arrested his wife[2] on the same charge eight days after his own arrest, appellant refused to admit his guilt. Nor did he take the stand in his own defense. As he had a right to do, he put the Government to full proof. Instead of accepting the challenge, the Government determined to convict him by his very silence.

 The constitutional protection against self-incrimination does not begin with a trial of a defendant on the charges against him. History tells us

---

**1.** The testimony in question, given by Officer Gannaway, follows:

"Q. Now then, did he tell you he had any weekend guests living there that might have put a raincoat in the closet?

"Mr. Tessmer:

"We object to him leading and suggesting the answers to this witness.

"The Court:

"Yes, don't lead.

"(By Mr. Braecklein):

"Q. Did he make any explanation to you as to how that can got in the raincoat in the closet?

"A. None.

"Q. Did he tell you he hired Joe Lambert to come out there and do his landscaping work and plant these stalks in the back yard?

"Mr. Tessmer:

"We object to it as leading and suggestive and improper.

"(By Mr. Braecklein):

"Q. Did he make any explanation how those stalks got in the back yard?

"A. No.

"Q. Did he make any explanation as to how the Prince Albert can got in his automobile?

"A. No, sir, he did not.

"Mr. Tessmer:

"Your Honor, we object to all this line of questioning because it is an attempt to show an admission of guilt, by silence, when he was under arrest, and would not be admissible against the defendant, if he said, 'I am guilty, it is all mine,' unless they laid a predicate, to get the statement; then all this, 'Did he tell you this—did he tell you that'— is a violation of our confession rules in our Federal Court.

"* * * * * *

"The Court:

"We will let the evidence in."

**2.** Regarding the reason for her arrest, the appellant's wife testified as follows:

"The Court:

"Mrs. Helton, I am not sure I understood your testimony as to what Lieutenant Gannaway said to you. Mr. Gannaway, of the police, about preferring charges against you. Why?

"A. Well, he just told my husband and I that one of us had to take the blame and if one of us did not take the blame he would file charges on both of us."

that it was the preliminary inquisition, prior to trial on the merits, which gave rise to the abuses, which resulted in the recognition of the privilege against self-incrimination. Under our law it is not the function of police officers to determine for the benefit of the jury whether or not a person under arrest on suspicion of crime has given a sufficient explanation, or any explanation at all, and the fact that the accused here remained silent rather than risk unwitting distortion of his statement by a police officer at a later date does not give in law, and should not be allowed to give in fact, rise to an inference of guilt. 8 Wigmore on Evidence § 2272. It must be remembered that it is not the guilty alone who may exercise the privilege of remaining silent. An innocent person is entitled to the same protection when he deems his best interests will be served by electing that course. 8 Wigmore on Evidence § 2251.

■ Congress, when it freed the accused in a criminal case from the common law disability against testifying in his own behalf, was careful to provide that "His failure to make such request (to testify) shall not create any presumption against him." 18 U.S.C. § 3481. Congress thereby recognized that implicit in the privilege against self-incrimination is not only the right to remain silent, but more important, the right not to have that very silence give rise to an inference of guilt. Bruno v. United States, 308 U.S. 287, 60 S.Ct. 198, 84 L.Ed. 257; Wilson v. United States, 149 U.S. 60, 13 S.Ct. 765, 37 L.Ed. 650.

■ It is true that the evidence of guilt here is overwhelming and that on a second trial, with the improper evidence excluded, the result may be the same. It is also true that under Rule 52 (a), Federal Rules of Criminal Procedure, 18 U.S.C., we must disregard harmless error. But Mr. Justice Harlan in Boyd v. United States, supra, 142 U. S. at page 458, 12 S.Ct. at page 295, must have had a case like this in mind when he wrote, "However depraved in character, and however full of crime their past lives may have been, the defendants were entitled to be tried upon competent evidence, and only for the offense charged."

Reversed and remanded.