Condor MERRITT, Appellant,

v.

UNITED STATES of America, Appellee.

No. 19603.

United States Court of Appeals
Fifth Circuit.

Jan. 28, 1964.

Sam E. Murrell, Robert G. Murrell, Sam E. Murrell & Sons, Orlando, Fla., for appellant.

Thomas J. Hanlon, III, Sp. Asst. U. S. Atty., Tampa, Fla., William A. Meadows, Jr., U. S. Atty., for appellee, Louis F. Oberdorfer, Asst. Atty. Gen., Joseph M. Howard, Washington, D. C., of counsel.

Before RIVES and JONES, Circuit Judges, and DAWKINS, District Judge.

RIVES, Circuit Judge.

This is an appeal from a judgment of conviction for income tax evasion in violation of Section 145(b), I.R.C.1939. The defendant, an uneducated but successful businessman, was indicted and tried on two counts covering the years 1947 and 1948. During that time he had employed a tax consultant who kept his books and records and prepared his tax returns. The Government's proof was based upon the net worth method. Its net worth schedule showed a computed net income of $25,634.63 compared to a reported income of $8,928.88 in 1947, and a computed net income of $25,991.65 compared to a reported income of $8,193.64 in 1948. Thus, there was an alleged understatement of income of $16,705.75 for

1947 and $17,798.01 for 1948.[1] The jury returned a verdict finding the defendant guilty on both counts, upon which a judgment of conviction was entered. The aggregate sentences imposed amounted to three years imprisonment, plus fines totaling $1,000.00.

The defendant bases his appeal on the following testimony of the Government's Special Agent who drew up the net worth schedule:

"Q. * * * As a matter of fact don't you know that as a matter of fact this taxpayer owned assets and had assets that you didn't even take into account in this case? Don't you know that of your own personal investigation?

"A. He has some other assets, yes, sir.

"Q. And this doesn't include all those assets does it?

"A. No, sir.

* * * * * *

"Q. * * * Are you willing to swear under oath that these assets represented in your net worth schedule are all and complete the assets of this taxpayer and all and complete the liabilities of this taxpayer?

"A. I know there are other assets of the taxpayer.

* * * * * *

"A. My investigation disclosed that the taxpayer would have other assets. I know of no other liabilities."

Neither counsel asked the Special Agent what these other assets were, and his testimony does not reveal what he had in mind.

The net worth method of proving income tax evasion proceeds on the assumption that, if in a particular year the increase (not accounted for by nontaxable items) in a taxpayer's net worth plus his nondeductible expenditures exceeds his reported net income to a substantial extent, the excess represents unreported income and permits an inference of willfulness on the part of the taxpayer. It is a method of reconstructing income rather than computing it, and provides circumstantial evidence only.[2]

In Holland v. United States, 1954, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150, the Supreme Court, in discussing the net worth method, concluded that the method "is so fraught with danger for the innocent that the courts must closely scrutinize its use." 348 U.S. at 125, 75 S.Ct. at 130, 99 L.Ed. 150. The Court further stated:

"While we cannot say that these pitfalls inherent in the net worth method foreclose its use, they do require the exercise of great care and restraint. * * * Appellate courts should review the cases, bearing constantly in mind the difficulties that arise when circumstantial evidence as to guilt is the chief weapon of a method that is itself only an approximation." 348 U.S. at 129, 75 S.Ct. at 132, 99 L.Ed. 150.

One of the most important elements of the Government's proof in a net worth case is the establishment of an opening net worth. In the Holland case the Supreme Court stated the requirement as follows:

"We agree with petitioners that *an essential condition* in cases of this type is the establishment, *with reasonable certainty*, of an opening net worth, to serve as a starting point from which to calculate future increases in the taxpay-

---

1. The defendant was able to show at the trial that at the end of 1947 he owed a $4,000 note to the Florida Bank & Trust Company of Winter Park, Florida, which he paid in full during 1948 and which was not included in the Government's computation. The defendant also produced evidence tending to show that he owed $5,500 in 1948 on a loan, although the note therefor had been dated in 1949. If the net worth schedule is amended to include these two items, it would leave an alleged understatement of $12,705.75 for 1947 and $16,298.01 for 1948.

2. See generally, 2 Mertens, Federal Income Taxation § 12.12 (1961); Avakian "Net Worth Computations as Proof of Tax Evasion," 10 Tax Law Review 431.

er's assets. The importance of accuracy in this figure is immediately apparent, as the correctness of the result depends entirely upon the inclusion in this sum of *all assets on hand at the outset."* 348 U.S., at 132, 75 S.Ct. at 133, 99 L.Ed. 150. (Emphasis added.) [3]

There is nothing in the record of this case to indicate what assets the Special Agent was referring to.[4] The Government's brief argues that there was one item of jointly-held real property appearing on the defendant's sworn list of real estate holdings which was not included in the net worth schedule because of the difficulty of ascertaining the defendant's interest in it. The Government points out that there is evidence that this property was not disposed of in 1947 or 1948 and, thus, would not affect the computed net income figures. Nevertheless, to assume that the Special Agent was referring to this particular item is a matter of pure speculation. Moreover, he referred to "some other assets," using the plural noun. There is no way for this Court to determine whether these assets were realty or personalty, or whether they were disposed of during the years in question.[5]

▮▮▮ The disposition of this appeal, then, is dependent upon whether the burden of going forward with the evidence was on the Government or the defendant. We conclude that the burden was on the

Government to identify these assets and to justify its failure to include them in the net worth schedule.

▮▮▮ In the Holland case the Supreme Court made the following statements relating to burden of proof:

"Nor does this rule shift the burden of proof. The Government must still prove every element of the offense beyond a reasonable doubt though not to a mathematical certainty. The settled standards of the criminal law are applicable to net worth cases just as to prosecutions of other crimes. *Once the Government has established its case,* the defendant remains quiet at his peril. Cf. Yee Hem v. United States, 268 U.S. 178, 185 [45 S.Ct. 470, 69 L.Ed. 904]. The practical disadvantages to the taxpayer are lessened by the pressures on the Government to check and *negate* relevant leads." 348 U.S. at 138–139, 75 S.Ct. at 136–137, 99 L.Ed. 150. (Emphasis added.)

It is clear from that portion of the Holland opinion quoted earlier [6] that the Government has not established its case until it has established with reasonable certainty an opening net worth. This would include listing or accounting for all assets of the taxpayer of which the Government is aware, either through its own investigation or through the checking of leads furnished by the taxpayer.

---

3. Prior to Holland, this Circuit made a similar statement in Bryan v. United States, 5 Cir. 1949, 175 F.2d 223, 225, aff'd, 338 U.S. 552, 70 S.Ct. 317, 94 L.Ed. 335 (1950).

4. There was no claim of a cash hoard. The defendant stated in his sworn statement that he might have had seven or eight thousand dollars in cash at one time during the period in question. The net worth schedule allows him $7,000 cash in the opening net worth for 1947. The only way the taxpayer could have been more favorably treated would have been to use the $8,000 figure; the failure to do so was not reversible error.

5. In a civil case it was held not to be reversible error to fail to include assets in

the opening and closing net worth when they were not disposed of, although they should have been included in the computation. Harp v. Commissioner, 6 Cir. 1959, 263 F.2d 139, 142. We need not decide whether this rule applies to criminal cases, since it has not been shown whether the assets mentioned by the Special Agent had been disposed of. It should be noted, however, that while the exclusion of such assets might not be prejudicial under some circumstances, if their value is great enough, their exclusion might affect the ratio between the computed net worth and the alleged understatement of income so as to make the alleged violation appear more flagrant or willful.

6. See text accompanying note 3, supra.

To hold otherwise would defeat the requirement that the Government both check and negate leads furnished by the taxpayer:

"When the Government rests its case solely on the approximations and circumstantial inferences of a net worth computation, the cogency of its proof depends upon its effective *negation* of reasonable explanations by the taxpayer inconsistent with guilt. Such refutation might fail when the Government does not track down relevant leads furnished by the taxpayer—leads reasonably susceptible of being checked, which, if true, would establish the taxpayer's innocence. When the Government fails to show an investigation into the validity of such leads, the trial judge may consider them as true and the Government's case insufficient to go to the jury. *This should aid in forestalling unjust prosecutions, and have the practical advantage of eliminating the dilemma, especially serious in this type of case, of the accused's being forced by the risk of an adverse verdict to come forward to substantiate leads which he had previously furnished the Government.* It is a procedure entirely consistent with the position long espoused by the Government, that its duty is not to convict but to see that justice is done." (Emphasis added.)

Holland v. United States, supra, 348 U.S. at 135–136, 75 S.Ct. at 135, 99 L.Ed. 150. Not only should the taxpayer not be required to substantiate leads previously furnished the Government, but he also should not be required to substantiate the existence of assets uncovered by the Government in its own investigation. Even in civil cases, where there is a presumption that the Commissioner's determination is correct, once it is shown that his determination is wrong, the burden of going forward with the evidence shifts to the Commissioner—there is no burden upon the taxpayer to show what is the correct determination. Grubb v. Commissioner, 6 Cir. 1963, 315 F.2d 753, 759; Harp v. Commissioner, 6 Cir. 1959, 263 F.2d 139. In the instant case, the failure to include in the opening net worth all assets known by the Government to have been held by the taxpayer during the period in question was error. In a civil case the burden would have shifted to the Government to account for these assets, in a criminal case as we have here, the burden remained with the Government— only after the Government has established its case does the defendant remain quiet at his peril.

The defendant testified in his own behalf and, in the course of that testimony, confirmed the Special Agent's testimony as to other assets at the beginning of 1947 and or 1948.[7] On cross-examination he could not answer as to what those other assets were.[8] The Government had the burden of identifying the assets not included in its opening net worth statement.

Accordingly, the judgment is reversed and the cause remanded.

Reversed and remanded.

---

7. "Q. Now, you have heard all of the testimony of all these witnesses in the case as to assets that you had at the beginning of 1947. Now, did you have any assets in addition to the assets that were testified about at the beginning of 1947?

"A. I don't know quite what you mean.

"Q. Well, Mr. Snyder testified that in his schedule he did not include all the assets you owned at the beginning of 1947. That is true that you did have other assets at the beginning of 1947 that he did not include in his schedules, is it not?

"A. That's right.

"Q. Is that also true for the beginning of 1948?

"A. That's right."

8. "Q. Do you know of any assets you have that wasn't on the schedule that Mr. Snyder has given us here with respect to your assets?

"A. Well, I don't know of any particular ones."