**UNITED STATES of America, Appellee,**

**v.**

**Charles MARCUS, Appellant.**

**No. 568, Docket 32230.**

United States Court of Appeals
Second Circuit.

Argued July 22, 1968.

Decided Sept. 20, 1968.

Certiorari Denied Jan. 13, 1969.

See 89 S.Ct. 633.

**564**

Abraham D. Sofaer, Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty., for the Southern Dist. of New York, David M. Dorsen and Pierre N. Leval, Asst. U. S. Attys., on the brief), for appellee.

Morton S. Robson, New York City (Marshall, Bratter, Greenne, Allison & Tucker and Michael E. Geltner, New York City, on the brief), for appellant.

Before LUMBARD, Chief Judge, and FRIENDLY and HAYS, Circuit Judges.

LUMBARD, Chief Judge:

Charles Marcus appeals from his conviction on nine counts for tax evasion and for making false statements in tax returns filed by some of his wholly owned corporations. He received a prison sentence of one year and fines totalling $30,000 after a trial before a jury, Judge Irving Ben Cooper presiding. On appeal Marcus challenges the sufficiency of the evidence, numerous rulings on the admissibility of evidence, the refusal of the trial judge to grant a mistrial following certain remarks made by the prosecutor during summation, and the propriety of portions of the judge's charge to the jury. Since we find no error in the trial judge's rulings and conduct of the trial we affirm the conviction.

The first four counts of the indictment charged Marcus under 26 U.S.C. § 7201 with attempting to evade his personal income taxes by filing false and fraudulent returns for the years 1959 through 1962. The remaining counts charged Marcus under 26 U.S.C. § 7206(1) with making false statements in the tax returns of five corporations which he wholly owned and controlled: Ben Frank, Inc., for the fiscal years ending January 31, 1960 and 1961; the Casa Trading Corp. for the years ending January 31, 1960 and 1963; the Taca Trading Corp. for the years ending January 31, 1960 and 1961; the Aritor Corp. for the year ending August 31, 1962; and the Baritor Corp. for the year ending August 31, 1962.

The evidence at trial showed that Marcus, a certified public accountant, had as his principal source of income the business of cashing checks for a fee through 43 checking accounts which he maintained at 10 banks. Most of these accounts were in the names of the five corporations named in the indictment, but some were in the names of friends, some in the names of fictitious individuals and companies, and five accounts were in Marcus' own name. Marcus also used the checking accounts of businesses for whom he did accounting, concealing this activity by using the cash of the businesses for his check cashing and depositing the checks he cashed in the business accounts. The evidence showed that Marcus charged fees ranging from ½% to 3% for cashing checks. Although Marcus cashed more than ten million dollars of checks during the

years 1959 through 1962 he claimed that he kept no books. Consequently the government established its case through the testimony of numerous witnesses from banks, persons for whom Marcus cashed checks, and persons whose accounts he used, and through the introduction of a large number of bank records.

Marcus told Special Agent Ferrise that he received a fee of ½% for his check cashing services. In computing Marcus' income the government applied this fee to his total check deposits, with the exception that a higher fee of up to 3% was applied to transactions in which clients testified they had paid this higher amount. To this total was added Marcus' income from interest on savings bank accounts and from his accounting fees. The government's computations showed that Marcus had underreported his taxable income for the years in question by amounts ranging from $9,000 to $26,000, as follows:

| Year | Taxable Income Reported | Government's Computation | Deficiency |
|------|------------------------|-------------------------|------------|
| 1959 | $ 3,555.87 | $12,618.81 | $ 9,062.94 |
| 1960 | $ 5,784.50 | $18,191.92 | $12,407.42 |
| 1961 | $ 3,729.55 | $19,326.05 | $15,596.50 |
| 1962 | $21,600.00 | $48,136.43 | $26,536.43 |

——————◆——————

■■■ There is no merit in appellant's argument that the government's evidence was insufficient to establish beyond a reasonable doubt that Marcus underreported his income. A review of the record shows that there was an abundance of evidence to support the conviction. Appellant's argument to the contrary seems based on the mistaken premise that the government must establish the precise amount by which income was underreported. In fact the prosecution meets its burden when it shows that income was underreported by a substantial amount. Swallow v. United States, 307 F.2d 81, 83 (10th Cir. 1962), cert. denied 371 U.S. 950, 83 S.Ct. 504, 9 L.Ed.2d 499 (1963); Olender v. United States, 237 F.2d 859, 867 (9th Cir. 1956), cert. denied 352 U.S. 982, 77 S.Ct. 382, 1 L.Ed.2d 365 (1957).

■■ The testimony of Special Agent Ferrise concerning certain admissions made to him by Marcus was vital to the government's case. Ferrise testified he had been told by Marcus that Marcus received a fee of ½% on each of the checks he cashed, that he deducted this fee at the time he cashed the checks, that he paid to himself the fees received by his corporations, and that he suffered no losses from bad checks. It is settled that these admissions are not competent evidence unless they are corroborated by independent evidence tending to establish either that the admissions were reliable or that the crime charged was in fact committed. Smith v. United States, 348 U.S. 147, 152–156, 75 S.Ct. 194, 99 L.Ed. 192 (1948). The government's evidence, particularly the testimony of numerous clients of Marcus, amply met both of these alternative standards.

Of course the government did not prove independently as appellant stresses, that Marcus charged a fee on each and every one of the thousands of checks he cashed or that he never sustained a loss on a check. But this was not the government's burden. The facts concerning the fees and the absence of losses were alleged to have been admitted by Marcus, and the prosecution needed only to provide the jury with a basis for concluding that the admissions had been made and were accurate. There was ample evidence in the record to support these conclusions.

■ There is no merit in appellant's contention that his admissions to Agent Ferrise should have been excluded since he was not warned of his right to counsel. Marcus was not in custody and he was fully aware that his activities were the subject of a tax investigation. In these circumstances the holding of Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), does not apply. United States v. Mackiewicz, 2d Cir., July 10, 1968, 401 F.2d 219.

The trial judge properly refused to strike the testimony of witness Arthur Streit. Streit identified numerous checks which he said he had cashed with Marcus for a 2% fee. He claimed that he used Marcus' services in order to obtain cash with which to purchase goods from suppliers who would not accept checks. On these occasions Marcus would supply Streit with invoices in the name of fictitious companies for Streit's bookkeeping purposes. Streit testified that when he had been contacted by the Internal Revenue Service he informed Marcus of this fact, and that Marcus had told him to "get rid of the books."

■ On cross-examination counsel for Marcus attempted to establish that Streit's purpose in cashing checks was to evade income taxes rather than to obtain cash for purchases. After responding to some questions relating to his claimed cash purchases Streit invoked his right against self-incrimination and refused to answer several additional questions. It is urged by appellant that Streit's refusals to answer unduly restricted Marcus' right of cross-examination, and that consequently Judge Cooper erred in denying a defense motion to strike all of Streit's testimony. However, all of the seven questions dealt with years which are not involved in this prosecution and went only to Streit's credibility. Since the questions involved only "collateral matters or cumulative testimony concerning credibility," United States v. Cardillo, 316 F.2d 606, 613 (2d Cir.), cert. denied 375 U.S. 822, 84 S.Ct. 60, 11 L.Ed.2d 55 (1963), the defense motion was properly denied.

■ Defense counsel also sought to establish that the reason Streit called Marcus after being contacted by the Internal Revenue Service was fear concerning his own, and not Marcus' tax status. Streit refused to answer a question concerning whether he had called Marcus because of his own fear he would be sent to prison for failing to pay tax on the checks Marcus had cashed for him. But this refusal to answer resulted in no prejudice to defendant's right of cross-examination for Streit had answered two very similar questions previously.

■ Appellant also claims that the trial judge committed reversible error in refusing to declare a mistrial because of remarks made by the prosecution during summation, remarks which are said to have been improper reflections on Marcus' failure to testify at the trial and on his refusal to answer questions during the government's investigation. We do not agree that the prosecutor's remarks could have been taken by the jury as a comment on defendant's failure to take the stand at trial, and we hold that under the circumstances the comment on defendant's refusal to answer questions before the trial was proper.

Special Agent Ferrise's testimony concerned admissions made by Marcus during an interview at which no stenographer was present. In an effort to attack Ferrise's credibility defense counsel in his summation laid heavy stress on the fact that at an interview with Ferrise five days after the alleged admissions were made, this time when a stenographer was present, Marcus had refused to discuss his check-cashing business. In addition it was pointed out that on two other occasions, when friends of his were present, Marcus had refused to talk with Ferrise. Thus the defense argument was that since Marcus had refused to answer questions with a stenographer present, and on the other two occasions, the jury should conclude, contrary to Ferrise's testimony, that Marcus also had not answered questions

at the earlier interview when a stenographer was not present.

The prosecution responded to the defense argument in these words:

"Mr. Marcus is not a stupid man. Nobody who could have run this operation is a stupid man. Mr. Marcus, I submit to you, avoided every opportunity to testify under oath. He may have felt erroneously that Mr. Ferrise could not take the stand to describe what happened, but he was unwilling, I submit to you, to submit himself to any question and answer statement under oath once it became clear to him that he was under investigation."

Immediately following this statement the prosecutor went on to explain the two other instances in which Marcus had refused to talk to Ferrise as stemming from his anxiety that his friends not realize the size of his check-cashing activity.

Thus when viewed in context the prosecutor's comments are seen to have been directed at Marcus' conduct during the investigation—a rebuttal to the argument raised by the defense—rather than at his failure to testify at trial. And while the language of the prosecutor could have been more precise, this is not an instance where the jury, contrary to the prosecutor's intent, would "naturally and necessarily" construe his statement as a comment on defendant's failure to testify. Morrison v. United States, 6 F.2d 809, 811 (8th Cir. 1925); cf. United States ex rel. D'Ambrosio v. Fay, 349 F.2d 957, 958–961 (2d Cir.), cert. denied 382 U.S. 921, 86 S.Ct. 301, 15 L.Ed.2d 235 (1965). It should be noted that defense counsel did not attempt to secure an instruction from the trial judge which would have clarified any ambiguity present in the government's summation on this point. Indeed, counsel requested the judge to make no comment whatever on the defendant's failure to testify and his right to remain silent.

■ But appellant also advances as a ground for mistrial the fact that the prosecutor's remarks were directed at Marcus' refusal to answer questions before a stenographer during the investigation. While there is authority to support the contention that comment upon a defendant's refusal to answer questions before trial is ground for a mistrial, see United States v. Sprengel, 103 F.2d 876 (3rd Cir. 1939); People v. Abel, 298 N.Y. 333, 83 N.E.2d 542 (1949), this cannot be the case when the subject was introduced to the jury by the defendant's own counsel. Once defense counsel had pointed to his client's refusal to answer questions in an attempt to undermine the credibility of a key government witness it was entirely proper for the prosecutor to respond by offering an alternative explanation for Marcus' prior silence. See United States v. Nasta, 2d Cir., July 17, 1968, 398 F.2d 293.

■ Finally, it is argued that Judge Cooper erred in his instructions in several respects. First, appellant points to the statement in the charge that "In the final analysis" the jury should acquit if from the evidence "it is more likely that the defendant is innocent than guilty * * *." In United States v. Hughes, 389 F.2d 535 (2d Cir. 1968), we held that identical language used in a charge* was error since it suggested to the jury that it apply a preponderance of the evidence standard. But Marcus' counsel made no objection to this language at trial, and Judge Cooper correctly instructed the jury concerning the government's burden of proof on numerous other occasions during his charge. (Record at 1592–95, 1599, 1600–01, 1605, 1623). The one incorrect reference does not constitute plain error which we should recognize despite counsel's failure to object to it at trial. Unit-

---

* *Hughes* was decided after the charge in this case was given.

ed States v. Baratta, 2d Cir., June 21, 1968, 397 F.2d 215.

Appellant also claims error in the following instruction concerning the element of wilfulness:

"The most burdensome, I would judge, issue with which you must wrestle is the one relating to wilfulness. I think this is the crux of the case; that is, whether the defendant knew that a substantial amount of additional tax was due, and that the failure of the defendant to report the additional income was wilful."

Appellant argues that this charge effectively withdrew from the jury the issue of whether any income was unreported. We disagree. The jury had been fully instructed regarding the elements of the crime which it must find in order to return a guilty verdict. Judge Cooper's remarks could not have been taken to mean that his careful instructions on these elements were to be disregarded.

The other claims of error in the charge do not warrant discussion.

Judgment affirmed.