Robert Gordon HAYES, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 23540.

United States Court of Appeals
Fifth Circuit.

Jan. 29, 1969.

Rehearing Denied March 28, 1969.
Certiorari Dismissed June 23, 1969.
See 89 S.Ct. 2133.

Wilfred C. Varn, Robert M. Ervin, Tallahassee, Fla., for appellant.

Mitchell Rogovin, Asst. Atty. Gen., Joseph M. Howard, Burton Berkley, Attys., Dept. of Justice, Washington D. C., Clinton Ashmore, U. S. Atty., Stewart J. Carrouth, Asst. U. S. Atty., Tallahassee, Fla., for appellee.

Before JONES and GODBOLD, Circuit Judges, and SCOTT, District Judge.

JONES, Circuit Judge.

The appellant, Robert Gordon Hayes, and his wife, Ruth, were indicted on January 11, 1965, in the Southern District of Florida for wilfully attempting to evade

and defeat income taxes due the United States for the years 1958, 1959 and 1960 in violation of 26 U.S.C.A. Sec. 7201. Pursuant to a motion filed by the defendants, the cause was transferred to the Northern District of Florida. At a jury trial, appellant Hayes was convicted and his wife acquitted on each of the three counts contained in the indictment. Subsequently, a fine of $2,000 was levied and concurrent sentences of fifteen months' imprisonment on each count were imposed. From this judgment and sentence, Hayes has appealed.

Appellant's first specification of error challenges the jurisdiction of the Southern District of Florida to return the indictment. Hayes filed his income tax returns for the years 1958, 1959 and 1960 with the District Director in Jacksonville, Florida, which, when the returns were filed, was within the Southern District of Florida. On July 30, 1962, an area including Jacksonville was transferred into the simultaneously created Middle District of Florida. 28 U.S.C.A. Sec. 89(b). It is asserted that, because the indictment was returned after Jacksonville became a part of the Middle District, a grand jury of the Southern District had no jurisdiction to return the indictment.

■ In answering appellant's jurisdictional challenge, reference to 18 U.S.C.A. Sec. 3240 is particularly appropriate. This section provides:

"Whenever any new district or division is established, or any county or territory is transferred from one district or division to another district or division, prosecutions for offenses committed within such district, division, county, or territory prior to such transfer, shall be commenced and proceeded with the same as if such new district or division had not been created, or such county or territory had not been transferred, unless the court, upon the application of the defendant, shall order the case to be removed to the new district or division for trial."

Because there is no question but that the Southern District could have indicted

Hayes had the Middle District not been created, Holbrook v. United States, 5th Cir. 1954, 216 F.2d 238, it seems clear that the above statute permits the Southern District to do so, although the place of the alleged offenses had been transferred to a new district after the time alleged for the commission of the offenses.

Appellant asserts that Quinlan v. United States, 5th Cir. 1927, 22 F.2d 95, requires a contrary interpretation of Section 3240. In that case, this Court expressed the view that 18 U.S.C.A. Sec. 121, which is the statutory predecessor of 18 U.S.C.A. Sec. 3240, had no effect on cases begun after the creation of a new district, and that the statute merely enabled the court in the old district "to retain jurisdiction of pending criminal cases which properly could not be begun in that court after the creation of the new district." Quinlan v. United States, supra at 98. If this interpretation of 18 U.S.C.A. Sec. 3240 is followed, appellant's contention would be upheld. However, both the plain meaning of the statute and a subsequent Supreme Court decision convince us that the above statement is not declaratory of the controlling principle.

In Lewis v. United States, 279 U.S. 63, 49 S.Ct. 257, 73 L.Ed. 615, the Supreme Court determined that the Eastern District of Oklahoma had jurisdiction to indict and try an offense committed in a county which had been transferred out of the Eastern District into the newly created Northern District after the commission of the offense but before the return of the indictment. While it is true, as is pointed out by the appellant, that this decision rested in part upon the language of the jurisdictional provisions of the act creating the new Northern District, the Supreme Court clearly stated that the result reached was also in accord with 28 U.S.C.A. Sec. 101. See Lewis v. United States, supra, at 71. This interpretation of the statute is consistent with the clear import of the language used therein. Section 3240 empowers an altered district to commence

prosecutions after the change by indicting for offenses committed within its prior boundaries before alteration "the same as if such new district or division had not been created * * *" Mizell v. Vickrey, 10th Cir. 1929, 36 F.2d 327. The district court here was correct in refusing to dismiss the indictment for lack of jurisdiction.

Appellant contends that the indictment was defective in that it failed to state an offense. The indictment alleged that Hayes did:

"Wilfully and knowingly attempt to evade and defeat * * * income tax due * * * by filing * * * with the district director * * * a false and fraudulent income tax return * * * in violation of section 7201 * * *"

■ The indictment is sufficient. It discloses the means by which Hayes attempted to defeat the tax even though tax evasion indictments need not contain such an allegation. Lott v. United States, 5th Cir. 1962, 309 F.2d 115; Reynolds v. United States, 5th Cir. 1955, 225 F.2d 123. Both the statutory language and a reference to the specific section alleged to have been violated are incorporated within the charge. This in itself is sufficient if all the essential elements of the offense are contained in the statute. Worthy v. United States, 5th Cir. 1964, 328 F.2d 386. Hayes was sufficiently apprised of the nature of the offense charged so as to permit him to prepare a defense and successfully plead former jeopardy if brought to trial in the future for the same offense. No more is required. United States v. Strauss, 5th Cir. 1960, 283 F.2d 155. Appellant's attack on the indictment must fail.

At the trial the Government relied upon the net worth method to establish its case. As stated in Merritt v. United States, 5th Cir. 1964, 327 F.2d 820, 821, this method of proving income tax evasion

"Proceeds on the assumption that, if in a particular year the increase (not accounted for by nontaxable items) in a taxpayer's net worth plus his nondeductible expenditures exceeds his reported net income to a substantial extent, the excess represents unreported income and permits an inference of wilfulness on the part of the taxpayer."

An essential element of the prosecution's proof in this type of case is the establishment of an opening net worth. Hayes contends that this figure was not established "with reasonable certainty" as is required. Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150. In support of this contention, Hayes asserts that the Government's calculation was inaccurate with respect to three particular items used in computing appellant's opening net worth.

The Government allowed $10,000 as a reasonable figure for cash on hand in 1951. This amount was based upon information offered by an accountant of the appellant who had been given a power of attorney to represent him in tax matters. A Government agent testified as to the accountant's calculations. Appellant objects to the use of this figure on the ground that it was established by hearsay testimony and because the Government failed to investigate Hayes' assertion that he placed $64,000 in a safety deposit box in a Tallahassee bank in 1951. Neither objection has merit.

■■ It is clear that appellant's accountant was acting within the scope of his employment and authority when he indicated his estimate of the extent of Hayes' cash reserves to the Government agent. Thus the accountant's statement is admissible against Hayes as an admission by an authorized agent. The hearsay objection is not tenable. Laird v. Air Carrier Engine Service, Inc., 5th Cir. 1959, 263 F.2d 948; Cox v. Esso Shipping Co., 5th Cir. 1957, 247 F.2d 629. It seems appropriate to note here that the accountant-client privilege under Florida Statute Sec. 473.15 (1967), is not applicable in a Federal criminal proceeding. Falsone v. United States, 5th Cir. 1953, 205 F.2d 734.

As to appellant's claim of a $64,000 cash hoard, we agree that the Government should investigate leads furnished by the taxpayer in arriving at an opening net worth. Merritt v. United States, supra. The record here shows that the Government did all that was required of it. During the investigation of this case, the Revenue agents repeatedly requested information concerning the amount of Hayes' cash on hand, yet no indication of $64,000 cash on hand in 1951 was made. Moreover, the Government agent did not learn of the Tallahassee safety deposit box until some time in 1962 at which time the funds, according to Hayes' testimony, had been depleted. Hayes had previously told a Government agent that he generally kept no more than $1,000 to $4,000 cash on hand at any one time. Under these circumstances, sufficient investigation by the Government is apparent, and the issue raised by Hayes' cash hoard claim was properly submitted to the jury.

The appellant makes an attack upon the $2,000 cost basis allowed by the Government for five and one-half acres of land sold by Hayes in 1959. Use of this basis, which was supplied by Hayes' accountant, resulted in a higher capital gain for the tax year involved. Appellant contends that use of this $2,000 basis was improper because the Government had previously allowed him and his wife a $5,000 cost basis on their joint tax return when the property was sold in 1959. Apparently it is believed that the Government is somehow estopped by this allowance. No authority is cited in support of this position. The record fails to show that the Government entered into a statutory agreement assigning $5,000 as the basis for the land. Under these circumstances, no estoppel can be found. See Sherwin v. United States, 9th Cir. 1963, 320 F.2d 137; United States v. Hardy, 4th Cir. 1962, 299 F.2d 600.

The last net worth item challenged by Hayes is the cost value of partially constructed apartments as of January 1, 1958. Appellant testified that the apartments were seventy-five percent completed on that date, and that a value of $9,000 should have been assigned to the cost of the apartments. Instead, the Government credited the apartments with a cost value of $3,500. This figure was taken from appellant's 1957 income tax return. Apparently, no other record of construction costs had been kept. These facts presented an issue which the jury resolved with sufficient evidence to support its determination. No error was committed. It seems appropriate to say here that use of the cost value asserted by appellant would have no effect on appellant's opening net worth for the years 1959 and 1960.

Hayes' next specification of error states that the district court committed error by admitting into evidence testimony relating to appellant's prior convictions. It is argued that these convictions are so remote in time that they have no bearing on appellant's present credibility.

It can not be doubted that a defendant who takes the stand in his own defense may be cross-examined concerning his prior convictions. Reese v. United States, 5th Cir. 1965, 353 F.2d 732. Such inquiry is permitted for the purpose of impeachment as to credibility. Taylor v. United States, 5th Cir. 1960, 279 F.2d 10. However, as stated in Fire Association of Philadelphia v. Weathered, 5th Cir. 1932, 62 F.2d 78, 79:

"The length of time that should elapse before a conviction for felony ceased to have any probative value cannot be fixed by the law, but must be left to the sound discretion of the trial court."

The record indicates that, before ruling on the admissibility of evidence of the prior convictions, the trial judge carefully considered both the nature of the prior offenses and the length of time that had elapsed since their commission. Considering these same factors, we find no abuse of discretion. If error were com-

mitted, the lack of prejudice caused thereby would prevent a reversal on this ground. See Steele v. United States, 5th Cir. 1957, 243 F.2d 712.

Further attacking the Government's conduct during the cross-examination of Hayes, it is asserted that error was committed when the United States Attorney asked the following question: "Did you escape from prison?" To this, appellant responded: "I did not. Yes, yes."

■ The question is improper and prejudicial, Hayes argues, because it sought to establish, not whether Hayes had been convicted of a crime, but whether Hayes had escaped. As noted by appellant, evidence of prior conviction is admissible; evidence of previous misconduct is not. Roberson v. United States, 5th Cir. 1957, 249 F.2d 737, 72 A.L.R.2d 434.

■ Hayes, unfortunately, cannot receive the benefit of the rule upon which he relies. In response to a question asked by defense counsel during direct examination, the appellant stated:

"One day I left [prison] and went back about three or four months later and they marked up an escape against me, and they still turned me outside even then. I was never locked up."

In the face of this statement, Government counsel's inquiry was not without the scope of permissive cross-examination.

Appellant urges that error was committed when Government agents and Government counsel commented on appellant's failure to make any explanation for his substantial increase in net worth. A reversal of appellant's conviction would generally be required on this ground. Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106. Here, however, peculiar circumstances may demand a different result.

After a preliminary investigation of appellant's books and records, the Government agents, at the request of appellant, obtained all further information from appellant's accountants. One of these accountants testified at the trial that after he indicated to Mr. and Mrs. Hayes the substantial increase in their net worth, he asked them: "Do you know where it came from, or are these figures correct?" The accountant then testified that no explanation of the increase in net worth was offered. Significantly, no objection to this testimony was raised.

After this accountant's testimony, one of the Government's tax investigators was called to the stand. On cross-examination, defense counsel attempted several times to establish that the agent had made unfounded and unnecessary assumptions as to Hayes' net worth. In response to such questions, the agent stated that no one would furnish him with different figures. An example of such an exchange is the following:

"Defense counsel: Haven't I repeatedly asked you if you would let me know specifically, what specific items you wanted so we could get them for you?

"Govt Agent: Repeatedly I asked. We did that repeatedly. We told you we wanted to know how much cash he had. Repeatedly we failed to hear it. This was done on numerous occasions."

Again, no objection was raised.

Later in the trial, another Government agent testified that no explanations as to the increased net worth had been made by anyone. At this time, defense counsel objected. This objection was overruled, but during the testimony of this agent the trial judge advised the jury that Hayes had the right to remain silent. On cross-examination, testimony concerning the lack of explanation was intentionally elicited by defense counsel through the following questions:

"Do you remember indicating to us at that conference * * * that if a satisfactory explanation could be made of any unexplained increases in net worth * * * you did not feel criminal liability existed?

"Did I understand your testimony earlier today, to say that if a satisfac-

tory explanation had been forthcoming you would have settled the case? "The fact that Mr. and Mrs. Hayes and I remained silent and did not come forward with an explanation, that is why we are here today?"

Appellant further asserts that Government counsel improperly commented to the jury on his failure to make explanations. The United States Attorney attempted in closing argument to discredit Hayes' claim to a $64,000 cash hoard by stating that Hayes had never made such a claim prior to the trial. No objection was raised at this time. Defense counsel thereafter twice alluded to the fact that Hayes had been advised to remain silent by his attorneys. In the latter part of the Government's closing argument, the Government attorney replied to these statements by suggesting the unlikelihood of Hayes remaining silent if the cash hoard claim were true. At this time, the following objection was raised:

"Your Honor, we respectfully object to his referring to what the court may do with respect to his explanation."

This objection was overruled.

Following these arguments, the trial judge again instructed the jury that the defendant was entitled to refuse to make any statements during the investigation and that the jury should draw no inference from the fact that the defendant elected to exercise this privilege.

It does not appear that any prejudicial error resulted from the comments which the appellant contends were improper. Much of the relevant testimony and argument was either not objected to, or was directly invited by the conduct of defense counsel. Furthermore, if there were any prejudicial impact from the statements, it was erased by the trial judge's several admonitions to the jury.

The appellant makes three additional contentions. These also are without merit. First, what this Court stated in Myers v. United States, 5th Cir. 1966, 356 F.2d 469, convinces us that the trial court committed no error in admitting into evidence and submitting to the jury two net worth summaries prepared by the Government. Second, no error can be found in the following charge to the jury:

"The attempt to evade or defeat a tax must be a wilful attempt: that is, it must be done knowingly, made with the specific intent to defeat the Government, from the Government a tax, imposed by the income tax laws which was the duty of the defendant to pay the Government. In other words, attempt must be knowingly made with the specific purpose of defrauding the Government of some substantial amount of income tax wilfully due from the defendants, or one of them.

"A fraudulent tax return is one that is false and known to be false by the person making it or causing it to be made and filed with the intent to deceive."

This language adequately defines "wilfulness," and no prejudicial error resulted from the trial judge's failure to include the phrase "bad purpose" within the charge. Third, whether or not Hayes' attempt to defeat income taxes due the United States was wilful constituted an issue which was properly submitted to the jury. That body's resolution of the issue is supported by substantial evidence.

The judgment and sentence of the district court should be and are hereby

Affirmed.

GODBOLD, Circuit Judge (dissenting):

During the investigative stages of this case, appellant "failed to explain" to the satisfaction of the government agents his substantial increase in net worth, and at times he specifically invoked his constitutional privilege to remain silent. In his closing arguments to the jury the government counsel commented on this failure to explain and on the invocation of the privilege. The majority concedes that these remarks normally would re-

quire a reversal of the case under the rationale of Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). But my brothers find that "peculiar circumstances" require a different result in this case.[1]

The comments of the government counsel could hardly have been more prejudicial.[2] Repeated reference was made to the failure to explain an increase in net worth as shown by the government's calculations. Comment was made on the fact that Hayes "stood on his constitutional rights." The members of the jury were asked whether they would have done the same. In the first volley of the prosecution barrage, during the initial closing argument by the prosecutor, the jury was told:

> This would have been a way if they had disclosed that vast amount of money they had hoarded, this would have been a way that you gentlemen would not have been sitting here four and a half days.[3] This trial would never have come up; these people would never have been indicted; nothing would have happened. All they had to do was make a truthful explanation of this increase and that would have ended the matter. That would have ended the matter.

> \*    \*    \*    \*    \*    \*

If Mr. Hayes had that money prior to 1950, he could not have been in-

dicted. All he had to do was to come forward and tell Mr. Snyder that he had these funds.

\*    \*    \*    \*    \*    \*

> [T]hese were conferences set up with appointments, to find out where the difference was between the government's figures and their figures, give a reasonable explanation of it—make an explanation of it, [the government agents] said, give us a reasonable explanation and we will cease this investigation and that will be the end of it, Mr. and Mrs. Hayes will not have to go through this endurance of being indicted and coming to trial and taking a chance of whether or not they will have to go to jail or not, this eliminates every bit of it. Why didn't they tell it? Why didn't they disclose it? They disclosed it the first time on this witness stand here the other day. You heard it the same time I did.[4]

To the above line of argument by the prosecution the first defense counsel to argue responded:

> The evidence shows that I told him and her that they would make no statements, at first, and Members of the Jury, that is their right under our Constitution and government. And if they choose not to explain to an enforcement officer of any government, then they have that right and can reserve the right to explain to the Mem-

1. Implied in the majority discussion is the view that the Fifth Amendment privilege against self-incrimination extended to the Internal Revenue investigation of the income tax affairs of the appellant and his wife. I am in accord with that view; therefore, I do not discuss the availability of the privilege. *See generally*, McKay, *Self-Incrimination and the New Privacy*, 1967 Supreme Court Review 193.

2. As to whether a prosecutor's comment on a defendant's pretrial assertion of the Fifth Amendment is, in the words of the majority, "prejudicial error," cf. Anderson v. Nelson, 390 U.S. 523, 524, 88 S.Ct. 1133, 1134, 20 L.Ed.2d 81, 83 (1968): "[C]omment on a defendant's failure to testify cannot be labeled harmless error in a case where such comment is extensive, where an inference of guilt

from silence is stressed to the jury as a basis of conviction, and where there is evidence that would have supported acquittal." In Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the Supreme Court held that before a comment on an assertion of the Fifth Amendment can be found harmless the court must be able to declare its belief that *it is harmless beyond a reasonable doubt.*

3. This remark, standing alone and not objected to, is so fraught with prejudice and appeal to improper motives that it should reverse this case.

4. These comments establish that, contrary to the majority's contention, the futher prejudicial remarks made by the government counsel in his final argument were not "invited" by defense counsel.

bers of the Jury and the Court under the rules of evidence as to what their explanation might be.

Then in the middle of his argument the second defense counsel said:

First of all, I remind you again, that the defendants, and his Honor will instruct you, that the defendants have no duty to prove themselves innocent. Furthermore, they have no duty to make any disclosures to the government and, furthermore, both Mr. Varn and I follow the practice when a lawyer is employed he tries to take care of his client and his business.

In his final closing argument the prosecutor delivered the coup de grace:

[Defense counsel Varn] also knows that if he and Mr. Ervin [also defense counsel] had come forth with any explanation as to the increase in his income he is charged with in 1958, 1959 and 1960, and come up here and said, "we have $64,000 in 1950" and been able to substantiate that, there would never have been a case. And yet they have a right to stand on their Constitutional Rights and not to say anything. But would you do it? Would you do it, and wait and be indicted and come up here and go through this trial, and wonder if you were going to prison, and say nothing.

It is to these last remarks that the defense made the objection quoted by the majority. The court's response to the objection was, "The jury will be appropriately instructed as to the matter in the full Charges of the Court. Let's move on." Government counsel resumed, saying:

Mr. Varn is the one that brought that up and I think I have a right to reply to it.[5] I don't think that any of you would sit back and wait and be indicted before coming forth and giving a reasonable explanation. You will have to decide that. That is one of the things for you to decide. * *

No "peculiar circumstances," no curative instructions,[6] no theories of waiver, invitation, or failure to object with precision (or to object at all), can make a silk purse of this sow's ear.

It is essential to distinguish between a defendant's Fifth Amendment privilege and the elements of the government's prima facie case set out in Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954). In *Holland* the Supreme Court said that "once the government has established its case the defendant [in a net worth prosecution] remains quiet at his peril." Id. at 138–139, 75 S.Ct. at 137, 99 L.Ed. at 166. This "failure to explain" relates to the proof the defendant may—or may not—adduce at the trial. It does not shrink the scope of the Fifth Amendment as it applies to pretrial investigation.

My reading of the record impels me to conclude that throughout the trial government counsel misconceived the interplay of the *Holland* principle and the Fifth Amendment. The government's position was not that Hayes, either personally or through his accountants or attorneys, waived his privilege against self-incrimination during the investiga-

---

5. This not only added to the prejudice but was factually incorrect as well. The initial comment on the pretrial failure to explain was made by the prosecutor. *See* text at note 4, *supra*.

6. The court's charge was not as all-curative as the majority say. The judge charged that under the Fifth Amendment one is not required to speak against himself or give a statement and that no inference was to be drawn from the fact that during the

investigation the accused refused to make any statement. However, immediately prior to that the trial judge had instructed that if the defendant offered an explanation as to the source of funds the government could not disregard it and the jury could consider failure of the government to check out an explanation if made, and then the judge said: "And if the defendants failed to supply information in that regard you may consider such failure, * * *"

tion. Nor was it that Hayes' testimony from the stand was so inconsistent with his prior exercise of the privilege as to permit the admission of evidence concerning that prior exercise for impeachment purposes. Compare Grunewald v. United States, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931, 62 A.L.R.2d 1344 (1957); United States v. Marcus, 401 F.2d 563 (2d Cir. 1968); petition for cert. den., 393 U.S. 1023, 89 S.Ct. 633, 21 L.Ed.2d 567 (Jan. 13, 1969).[7] Rather, the government's position was that the taxpayer had a right during the investigation to stand on his privilege and not produce evidence or otherwise explain his increase in net worth, but that his exercise of the privilege coupled with his offering of an explanation for the first time at the trial was a substantive indication of guilt.[8] In short, the government used appellant's exercise of his Fifth Amendment privilege as an affirmative weapon to convict.

An accused cannot be penalized for exercising his constitutional privilege against self-incrimination either through comment on his failure to take the stand, Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); Anderson v. Nelson, 390 U.S. 523, 88 S.Ct. 1133, 20 L.Ed.2d 81 (1968), or by testimony at trial of a pretrial exercise of the privilege, Grunewald v. United States, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931, 62 A.L.R.2d 1344 (1957); Walker v. United States, 5 Cir. 1968, 404 F.2d 900 [Dec. 11, 1968]; Helton v.

United States, 221 F.2d 338 (5th Cir. 1955). In like manner he is protected from prosecutorial comment at trial on his pretrial exercise of the privilege.

Only a few weeks ago in Walker v. United States, *supra,* 404 F.2d at 903 this court said:

We would be naive if we failed to recognize that most laymen view an assertion of the Fifth Amendment privilege as a badge of guilt. As said by Mr. Justice Frankfurter, speaking for the Court:

"This constitutional protection must not be interpreted in a hostile or niggardly spirit. Too many, even those who should be better advised, view this privilege as a shelter for wrongdoers. They too readily assume that those who invoke it are either guilty of crime or commit perjury in claiming the privilege. Such a view does scant honor to the patriots who sponsored the Bill of Rights as a condition to acceptance of the Constitution by the ratifying States."

Ullmann v. United States, 1956, 350 U.S. 422, 426, 427, 76 S.Ct. 497, 500, 100 L.Ed. 511.

In *Walker* the government was allowed to elicit from one of its witnesses, the owner of credit cards used by the accused in a Dyer Act case, that in a pretrial conversation he asked the accused, "Just how did you get my credit cards?"

---

7. *Marcus* presented a different question than is before us. The agent there testified to admissions made to him by the defendant during the investigation. Defense counsel argued to the jury that on other and later occasions the defendant had refused to answer the agent's questions, and that from this fact the jury should conclude that the agent's testimony of earlier admissions actually made was not to be believed. The court held it was not ground for mistrial that in response to this defense attack on the credibility of a key government witness the prosecutor argued that the accused, once it became clear to him he was under investigation, was unwilling to submit to question and answer under oath.

8. Professor Steven Duke points out the practical effects of the taxpayer's pretrial claim of privilege, one of which is the consequence here occurring of the exercise being treated as evidence of guilt. *See Duke, Prosecutions for Attempts to Evade Income Tax: A Discordant View of a Procedural Hybrid,* 76 Yale L.J. 1 (1966). In the instant case the prosecution's approach is exemplified by the fact that in response to appellant's motion for a bill of particulars seeking details of the government's calculations, the government stated, and reiterated, that the defendants had been afforded opportunities to explain their tax deficiencies but "no explanation has been forthcoming."

and the defendant responded, "I refuse to answer on the ground it might incriminate me." This was held error. Prosecutorial comment on this matter in argument to the jury, though without objection, was held so improper and prejudicial as to constitute plain error.

Nearly 15 years ago this court said in Helton v. United States, supra:

> The constitutional protection against self-incrimination does not begin with a trial of a defendant on the charges against him. History tells us that it was the preliminary inquisition, prior to trial on the merits, which gave rise to the abuses, which resulted in the recognition of the privilege against self-incrimination. Under our law it is not the function of police officers to determine for the benefit of the jury whether or not a person under arrest on suspicion of crime has given a sufficient explanation, or any explanation at all, and the fact that the accused here remained silent rather than risk unwitting distortion of his statement by a police officer at a later date does not give in law, and should not give in fact, rise to an inference of guilt. 221 F.2d at 341–342.

The language of Mr. Justice Black in his concurring opinion in *Grunewald* also is pertinent:

> I can think of no special circumstances that would justify use of a constitutional privilege to discredit or convict a person who asserts it. The value of constitutional privileges is largely destroyed if persons can be penalized for relying on them. It seems peculiarly incongruous and indefensible for courts which exist and act only under the Constitution to draw inferences of lack of honesty from invocation of a privilege deemed worthy of enshrinement in the Constitution. 353 U.S. at 425–426, 77 S.Ct. at 984–985, 1 L.Ed.2d at 955.

For these egregious errors of constitutional dimensions, this case should be reversed and appellant granted a new trial.