WALTER L. AXELROD, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Axelrod v. Commissioner
Docket No. 4366-78.
United States Tax Court
T.C. Memo 1982-92; 1982 Tax Ct. Memo LEXIS 654; 43 T.C.M. (CCH) 614; T.C.M. (RIA) 82092; February 22, 1982; As amended February 24, 1982 Walter L. Axelrod, pro se. Michael R. Morris, for respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Chief Judge: Respondent determined deficiencies in petitioner's Federal income taxes and additions to tax pursuant to section 6653(b)[1] as follows: Year
Deficiency
Addition to Tax
1964
$ 27,396.83
$ 13,698.42
1965
53,611.91
[1] 28,805.96
1966
36,101.36
18,050.68
1967
37,385.67
18,692.83
*655 The main issue is whether respondent has established the propriety of the section 6653(b) addition to tax for fraud for each of the years involved. See section 7454(a); Rule 142(b). The resolution of the issue will determine whether respondent is prohibited from assessing and collecting the amounts in dispute because of the statute of limitations. See section 6501(a). FINDINGS OF FACT Some of the facts have been agreed to by the parties by way of respondent's request for admissions and petitioner's answers, and these facts are found accordingly. During the years in dispute, petitioner kept his books using the cash receipts and disbursements method of accounting. He timely filed joint [2] Federal income tax returns for these years with the District Director of Internal Revenue at Los Angeles, California, showing the following amounts of gross and taxable income: Year
Gross
Taxable
1964
$ 15,471.01
$ 8,412.75
1965
14,777.02
5,494.02
1966
14,107.27
907.34
1967
35,940.00
23,445.00
*656 Petitioner is a licensed physician who engaged during the years in dispute in the practice of medicine as a sole practitioner in southern California. During these years, petitioner supported himself, his wife (since divorced), and their four sons with income from his substantial medical practice, dividends, interest, rents, and proceeds from the sale of real estate and securities. Petitioner owned several cars including one Cadillac (sold in 1964), and he enjoyed memberships in at least two country clubs. Petitioner actively traded securities through at least 17 brokerage houses, and he had a basis in his securities of at least the following amounts: on December 31, 1963, $ 608,426.60; on December 31, 1964, $ 607,390.40; on December 31, 1965, $ 351,848.28; on December 31, 1966, $ 300,226.18; and on December 31, 1967, $ 609,166.00. Petitioner had accounts with at least 12 banks and savings and loan associations, and eight of these accounts bore interest. These accounts paid petitioner interest of $ 0.00, $ 5,563.41, $ 11,180.02, and $ 1,166.37 for the years 1964 through 1967, although petitioner's Federal income tax returns only disclosed bank and savings and loan association *657 interest of $ 0.00, $ 151.59, $ 40.91, and $ 1.096.00 for those same years. [3]
Petitioner also owned both unimproved and improved real estate. In all, petitioner had a cost basis in his assets and liabilities of at least the following amounts [4]
As of Dec. 31
Assets
Liabilities
1963
$ 740,100.21
$ 34,016.46
1964
799,979.12
82,532.66
1965
1,036,558.80
204,849.19
1966
1,058,673.17
185,955.00
1967
1,121,571.86
171,198.22
During the years in dispute, petitioner made nondeductible payments *658 or incurred nondeductible losses as follows: [5]
Year
Amount
1964
$ 41,376.87
1965
5,636.34
1966
44,978.55
1967
13,384.67
Petitioner's marriage began to go bad in 1960, and it progressively got worse as time went on. Between 1964 and 1967, petitioner was extremely distraught because of the deterioration of his marriage, although he was able to continue practicing medicine during these years. The notice of deficiency forming the basis of the instant dispute was issued on or after April 13, 1978. ULTIMATE FINDING OF FACT Petitioner underpaid his Federal income tax for each of the taxable years 1965 and 1966 and at least a part of the underpayment for each such year was due to fraud with intent to evade tax. OPINION This *659 case has had a long and tortuous history culminating in a trial whose brevity was apparently attributable to the fact that petitioner, through his then counsel, admitted the vast bulk of respondent's requests for admissions. [6] Indeed, it is clear that petitioner's admissions are the fulcrum of respondent's position -- a position which can be sustained only to the extent that respondent is able to prove fraud since, in the absence of fraud, the statute of limitations, see section 6501(a) and (c)(1), has expired on the assessment of the claimed deficiencies. *660 As a consequence, we first turn our attention to the issue of fraud. That issue is factual and is to be determined upon the basis of the entire record and respondent has the burden of proving the existence of fraud by clear and convincing evidence. See. 7454(a); Rule 142(b); Grosshandler v. Commissioner,75 T.C. 1, 19 (1980). That burden may not be carried by the mere failure of the petitioner to contest or carry his burden of proof in respect of the underlying deficiency (see p. 20, infra). Estate of Beck v. Commissioner,56 T.C. 297, 363 (1971), York v. Commissioner,24 T.C. 742, 743 (1955). Neither will fraud be imputed or presumed nor can a finding thereof rest on mere suspicion. Green v. Commissioner,66 T.C. 538, 550 (1976). However, we are entitled to recognize that direct evidence of fraud is often not available and that we may draw reasonable inferences from the record as a whole. Grosshandler v. Commissioner,supra.The ultimate test is whether petitioner intended to evade taxes *661 which he knew or believed to be owing. Danenberg. v. Commissioner,73 T.C. 370, 393 (1979). In the instant case, respondent has alleged the following circumstantial evidence of fraud: (1) that petitioner persistently failed to report substantial amounts of gross income; (2) that petitioner tried to conceal his true income by failing to record much of the income generated by his medical practice; (3) that petitioner tried to conceal his substantial net worth by using a superfluity of bank and brokerage accounts; and (4) that petitioner refused to cooperate with the Internal Revenue Service in its investigation of his financial affairs. By virtue of petitioner's admissions, respondent has arrived at what he describes as a substantial increase in petitioner's net worth for each of the years in question and argues that these increases (plus petitioner's annual expenditures and losses less his deductions and nontaxable income) demonstrate that petitioner received far greater amounts of gross income than he reported. There is no question that the net worth method of income reconstruction *662 may be used by respondent to prove a taxpayer's fraud. Estate of Beck v. Commissioner,supra;Stratton v. Commissioner,54 T.C. 255 (1970); see Holland v. United States,348 U.S. 121 (1954). However, because of its abstraction and reliance on inference, its use "require[s] the exercise of great care and restraint." Holland v. United States,supra at 129. With the exception of the taxable years 1965 and 1966 (see pp. 16-20, infra), we have several difficulties in concluding that such "net worth" increases, taken in conjunction with the sparse transcript of testimony, constitute the clear and convincing evidence required to satisfy respondent's burden of proof: (1) Petitioner's admissions as to his assets and liabilities at the end of each year in question do not necessarily establish that his "net worth" correspondingly increased. Nowhere in the admissions did petitioner concede that the excess of assets over liabilities as computed by respondent in fact represented his net worth. Petitioner testified on his own behalf and, although he never claimed either in his testimony or otherwise that *663 he had other assets and liabilities or that respondent's computations were incorrect, [7] he was never asked whether such was the case. Compare Holland v. United States,supra at 134 n.6. Were this the only element involved, we would be loath to conclude that the admitted excess of assets over liabilities at the end of each year did not establish net worth with reasonable certainty. But, we think respondent's failure to probe this aspect of the case is a significant element when other gaps in respondent's case are taken into account. Our concern over respondent's failure so to probe is heightened by the extremely general nature of the testimony of respondent's revenue agent both as to the manner in which he sought to determine petitioner's assets and liabilities at the beginning and end of each year in question and as to the likely sources of the excess of assets over liabilities which he found to exist. *664 (2) It is obvious that petitioner's medical practice and his investments were likely sources of income, but the extent to which those sources might have generated income in excess of the amounts reported by petitioner on his income tax returns is open to serious question on the basis of the record before us. To be sure, petitioner dealt extensively in cashiers' checks, but the only evidence with regard to the source of the funds used to acquire those checks is that of the revenue agent who merely testified that a Ms. Fort in petitioner's office told him that she placed the checks representing insurance company remittances on petitioner's desk and that, after petitioner examined them, he would give her some checks which she entered into petitioner's log book. While this testimony was admissible as an exception to the definition of hearsay (Rule 801(d)(2)(D), Fed. R. Evid.), it was couched in only the most general terms. There is no indication in the record as to the amounts involved in the checks which, by inference, it can be concluded that petitioner did not turn over to Ms. Fort. Respondent made no effort to provide specifics, for example by having the revenue agent elaborate *665 on his testimony or by calling Ms. Fort or at least explaining her unavailability, if such was the case. In a similar vein, respondent did not seek to introduce the testimony of the person or persons who prepared petitioner's tax returns nor explain their unavailability, if such was in fact the case -- persons who might well have thrown some light on the situation by relating what information they had been furnished in regard to petitioner's income or other receipts for the taxable years in question. Furthermore, the revenue agent testified in the briefest and broadest terms about how he conducted his investigation and, even in this context, spoke only in a cursory fashion about his efforts to locate petitioner's bank and brokerage accounts. In this connection, we note that the broker's statements that were obtained and admitted by petitioner show only that petitioner engaged in numerous securities transactions (his investment in securities ranged from a low of $ 300,226 to a high of $ 609,166 during the taxable years in question) but do not reveal any dividend income [8] nor do they contain sufficient information from which we could determine whether petitioner realized any gain *666 during the taxable years. See United States v. Brewer,486 F.2d 507, 509-510 (10th Cir. 1973). At no point did the revenue agent testify as to how he evaluated the information he obtained in terms of utilizing or disregarding the same; thus, on the record before us, we cannot definitely determine that the agent included all of petitioner's assets and liabilities in his "net worth" analysis. Cf. Merritt v. United States,327 F.2d 820, 822-823 (5th Cir. 1964). Nor did the revenue agent explain how he arrived at his estimates of amounts expended for personal consumption. [9]
*667 While we recognize that respondent is not required to prove that likely sources of income in fact produced the income which he asks us to measure by the excess of admitted assets over liabilities, we think it was incumbent upon him, under the particular circumstances of this case, to produce some corroborating evidence that those sources produced, likely have produced, some amount in excess of that reported by petitioner on his returns. Cf. Holland v. United States,348 U.S. at 137; Foster v. Commissioner,487 F.2d 902 (6th Cir. 1973), affg. per curiam a Memorandum Opinion of this Court; United States v. Fenwick,177 F.2d 488 (7th Cir. 1949). This, in our opinion, he has not done. In this connection, we note that petitioner reported substantial amounts of gross receipts from his medical practice during the years in question ($ 42,682.41 for 1964, $ 42,345.73 for 1965, $ 42,277.74 for 1966, and $ 55,063 for 1967). Nor did respondent seek to carry his burden of proof by introducing any evidence, either through the questioning of petitioner or otherwise, that petitioner did not have nontaxable sources which could have accounted *668 for the admitted excess of assets over liabilities at the end of each of the taxable years in question. United States v. Massei,355 U.S. 595 (1958); Foster v. Commissioner,supra.[10] Clearly, under the circumstances herein, petitioner was not required to take up the cudgels and affirmatively explain that the "net worth" increases did not come from his various activities but rather from nontaxable sources. See United States v. Fenwick,supra at 490-491. In this connection, we note that we do not have a situation where petitioner has sought to account for the alleged increase in net worth by pointing to a nontaxable source which respondent successfully negated. See Leong v. Commissioner,T.C. Memo. 1977-19, affd. by order 573 F.2d 1291 (2d Cir. 1977); Foster v. Commissioner,T.C. Memo. 1972-188, affd. per curiam 487 F.2d 902 (6th Cir. 1973). (3) Respondent also seeks to buttress his determination of fraud by claiming that petitioner failed to cooperate *669 in the Internal Revenue Service's investigation of his financial affairs. While such noncooperation can be an indicium of fraud, Grosshandler v. Commissioner,75 T.C. at 20, petitioner's only acts of noncooperation were missing one scheduled appointment with an Internal Revenue Service agent and misinforming that agent as to the number of his bank and brokerage accounts. While we think those facts would be in any event only marginally relevant on the ultimate question of petitioner's intent at the time he filed his returns, see Fox v. Commissioner,61 T.C. 704, 717 (1974); Benes v. Commissioner,42 T.C. 358, 384 (1964), affd. 355 F.2d 929 (6th Cir. 1966), they are particularly dubious in the instant case given that petitioner did in fact make his office books available for inspection. We have our suspicions -- and, indeed, strong suspicions -- that petitioner fraudulently sought to evade his taxes for each of the years in question, but *670 mere suspicion of fraud is not enough. Ferguson v. Commissioner,14 T.C. 846, 849 (1950). The fact is that we are not satisfied that respondent has carried his burden of proving fraud by clear and convincing evidence with respect to the taxable years 1964 and 1967. In so stating, we again emphasize that we might have reached the opposite result if all of the elements which we have discussed had not existed. It is the combination of those elements, in their totality and in light of the record as a whole, which has led us to conclude and hold that fraud has not been proved for those years and that, consequently, they are barred by the statute of limitations. We take a different view with respect to the taxable years 1965 and 1966 and it is to those years that we now turn our attention. As to the years 1965 and 1966, there is clear evidence of petitioner's failure to report substantial amounts of interest income. Thus, as to these years, there is no question that petitioner filed false returns, and so the only issue is whether he did this as a deliberate attempt to avoid his tax liability. While the mere understatement of income by a taxpayer does not, standing *671 alone, prove the existence of fraud, it is "some evidence" of a taxpayer's fraudulent intent. Estate of Clarke v. Commissioner,54 T.C. 1149, 1162 (1970). That petitioner reported some taxable interest for both 1965 and 1966 clearly establishes that petitioner was aware of his obligation to report interest. Moreover, petitioner was a sophisticated professional with substantial investment activities, thereby reinforcing the inference that petitioner knew of his obligation to accurately report his interest income. See Vise v. Commissioner,31 T.C. 220, 227 (1958), affd. 278 F.2d 642 (6th Cir. 1960). Further, the substantial amounts of the omissions in 1965 and 1966 relative to the amounts of interest income which petitioner reported ($ 5,563.41 vs. $ 151.59 for 1965, $ 11,180.02 vs. $ 40.91 for 1966) strongly undermine the possibility that petitioner simply forgot to include minor items of income. Cf. Smith v. Commissioner,32 T.C. 985, 987 (1959). [11]
As we have *672 found that petitioner neither overlooked the interest income which he failed to report nor was unaware of his obligation to report it, we are left with the only other plausible alternative: that petitioner intentionally sought to avoid a tax known or believed to be owing. This is the touchstone of fraud. Danenberg v. Commissioner,73 T.C. at 393. Petitioner seeks to rebut this conclusion by arguing (1) that the distintegration of his marriage so preoccupied his mind that he was unable to form a fraudulent intent, and (2) that the errors on his tax return were not beliberate but were the effects of arithmatic dyslexia. We do not find either argument to be credible. We are convinced of petitioner's testimony as it related to his perceptions of his marriage, and we are equally convinced of the anguish which petitioner suffered on account thereof. Yet, petitioner testified that he was able to continue his "busy" medical practice and the evidence demonstrates that he engaged in substantial securities transactions during this time. We find it incredible that petitioner had *673 the presence of mind to practice medicine and engage in such financial activities, yet claim that he did not have the presence of mind to report income he clearly received. Moreover, the Federal income tax returns filed and signed by petitioner document petitioner's concern for, and ability to use, detailed figures and explanations in reporting and computing his Federal tax liability. As to petitioner's "arithmetic dyslexia" argument, it suffers from a total failure of proof. Although we impressed upon petitioner the need for some evidence other than his self-serving assertion that he was afflicted with this rare disease, none was offered. Moreover, a long-time acquaintance of petitioner testified that he had never observed any symptom of petitioner's alleged sickness, and our own observations of petitioner before this Court reenforce our belief that he is intelligent, articulate, and fully able to manipulate concepts and numbers. In short, adopting petitioner's "arithmetic dyslexia" argument requires accepting petitioner's improbable and biased story in the face of nothing but contrary evidence. Such testimony need not be accepted, Archer v. Commissioner,227 F.2d 270, 273 (5th Cir. 1955), *674 affg. a Memorandum Opinion of this Court; see Dougherty v. Commissioner,60 T.C. 917, 932-933 (1973), and given the circumstances of this case, we refuse to do so. [12]
For the reasons given above, we hold that petitioner filed a false return with the intent to evade tax for the years 1965 and 1966, and therefore assessment and collection of the underlying deficiencies and additions to tax for those years are not barred by the statute of limitations. Section 6501(c). There remains to be determined the amount of the underlying deficiencies for those years. *675 The burden of proof is on petitioner to prove that the underlying deficiencies determined by respondent are incorrect. Rule 142(a). There is no evidence inconsistent with the determinations in this case, and petitioner did not argue at trial or on brief that they were wrong. While the deficiencies were based upon a reconstruction of petitioner's "net worth" which we did not accept as proof of petitioner's fraud, that was because respondent failed to carry his burden of proving that the reconstruction was reliable. See pp. 10-16 supra. However, as to the deficiencies, since petitioner has failed to show error in respondent's computations, respondent's determinations are sustained. [13] See Tunnell v. Commisioner,74 T.C. 44, 56-58 (1980); Jones v. Commissioner,29 T.C. 601, 619 (1957); Jackson v. Commissioner,380 F.2d 661, 664 (6th Cir. 1967), affg. T.C. Memo. 1964-330; cf. Bilsky v. Commissioner,31 T.C. 35 (1958). *676 The only remaining issue is the propriety of the additions to tax determined by respondent pursuant to section 6653(b). The burden is on respondent to prove that part of petitioner's underpayment (as defined by section 6653(a)) was due to fraud, Rule 142(a), and he must meet that burden with clear and convincing evidence. Danenberg v. Commissioner,73 T.C. at 393. We have already found, for the purposes of the period of limitations, that respondent proved by clear and convincing evidence that such parts of the 1965 and 1966 deficiencies attributable to unreported interest income were due to fraud, and that finding meets respondent's burden as to section 6653(b) as well. Estate of Clarke v. Commissioner,54 T.C. at 1161-1162. A finding that some part of the underpayment is due to fraud is sufficient to sustain the addition to tax with respect to the entire deficiency. Mensik v. Commissioner,37 T.C. 703, 752-753 (1962), affd. 328 F.2d 147 (7th Cir. 1964). Decision will be entered for respondent for the taxable years 1965 and 1966 [14] and for petitioner for the taxable years 1964 and 1967. *677 Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in dispute. All rule references are to the Tax Court Rules of Practice and Procedure.↩
1. This figure should be one-half of $ 53,611.91, or $ 26,805.96 as the statement attached to the deficiency notice shows. Section 6653(b)↩.
2. The notice of deficiency forming the basis of the instant dispute was issued to petitioner alone.↩
3. Petitioner also reported taxable bond interest of $ 20 in 1966 and $ 415 in 1967. The returns also disclosed dividends of $ 1,492.15, $ 924,01, $ 430.06, and $ 2,820 for 1964 through 1967.↩
4. Respondent set forth, in Appendix A to his brief, a table summarizing the facts agreed to by the parties. Our findings accord with that table with the exception of $ 2,000 in cash per year, $ 6,770 in cashiers' checks in 1964, and a $ 2,000 mink jacket in 1967, all of which petitioner denied having on hand at the time, as well as a $ 1,000 correction to the basis of certain improvements made to petitioner's business property. See also note 13, infra.↩
5. The amounts listed do not include respondent's estimated annual living expenses of petitioner. While the lack of such finding bears on the issue of fraud because of respondent's burden of proof (see note 9, infra), it does not affect the calculation of the underlying deficiencies as to which petitioner has the burden of proof (see p. 20, infra↩); those estimated living expense properly enter into that calculation.
6. The filing of petitioner's responses to respondent's request for admissions was accomplished only after prolonged proceedings before this Court. At the trial, petitioner, who had previously been represented by two separate counsel whom he had discharged, represented himself and sought to be relieved of his responses. Under all the circumstances revealed by the record, the Court decided that he should not be so relieved and directed that if, after trial, petitioner obtained appropriate representation of counsel and such counsel moved to reopen the case and set forth good grounds for that being done, the Court would give careful consideration to any such motion. Petitioner has not sought to take advantage of this opportunity.↩
7. Petitioner did claim that respondent's assertion that he had $ 2,000 cash on hand at the beginning of, each year was excessive, but respondent accepted petitioner's claimed figure of $ 200. In any event, this adjustment has no effect in light of our disposition in respect of the initial taxable year, to wit 1964.↩
8. With respect to interest income, there appears to be no discrepancy between the amounts revealed by the record and those reported in petitioner's return for 1964 and only a nominal discrepancy for 1967. The situation with respect to 1965 and 1966 is different. See pp. 16-20, infra.↩
9. We note that a substantial portion of respondent's computation of petitioner's unreported income turns on the amount of petitioner's nondeductible annual living expenses, yet respondent offered no evidence in support of his estimates of these amounts. Compare United States v. Scott,660 F.2d 1145, 1151 and 1173 (7th Cir. 1981); Millikin v. Comissioner,298 F.2d 830, 836↩ (4th Cir. 1962), affg. a Memorandum Opinion of this Court.
10. Petitioner's admissions went no further than to admit that he received an inheritance of $ 4,007.04 in 1967.↩
11. Compare Belcher v. Commissioner,T.C. Memo. 1958-180, with Holcombe v. Commissioner,T.C. Memo. 1961-233↩.
12. In addition, petitioner made no showing that, even if he had had dyslexia, it would explain his failure to report taxable interest. Such a disease, as best we understand petitioner's allegations, would explain transpositions rather than omissions. Yet, on petitioner's income tax returns, interest-paying bank accounts were itemized, and while some accounts were not represented, those that were listed did not have transposed figures.↩
13. While respondent made a concession on brief, it concerned the year 1967 and is for that reason irrelevant. Similarly, the minor errors made by respondent, see note 4 supra,↩ do not affect the determinations for 1965 and 1966.
14. The amount of the addition to tax for 1965 will be modified to take into account the error in the deficiency notice. See p. 2, supra. ↩